[Crim. No. 6521. Second Dist., Div. Two. Aug. 23, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GUY DEWEY JAQUISH, Defendant and Appellant.

George V. Denny III, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Leslie F. Bell, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—In May of 1958, appellant was charged with committing lewd acts upon a child in violation of section 288 of the Penal Code. Prior convictions of assault with intent to rape, a felony (Wisconsin 1934) and violation of sections 288 and 288a (California 1947) were charged and found to be true. Appellant pleaded not guilty and not guilty by reason of insanity. He waived a jury on both pleas. On his plea of not guilty, appellant was found guilty and the priors were found to be true. On his plea of not guilty by reason of insanity, appellant was found to be sane. The court also found appellant to be a probable sexual psychopath and ordered his placement in Atascadero State Hospital for observation for a period

not to exceed 90 days. At the conclusion of the observation period, the superintendent of Atascadero reported to the court that appellant was a sexual psychopath, was a menace to the health and safety of others, but would not benefit by further treatment. Appellant was then sentenced by the court to be imprisoned for the term required by law.

The record does not show, as required by Penal Code, section 1025, that pleas were entered to the priors or that there was any arraignment thereon, although the priors were found to be true.

Appeals to the District Court of Appeal and the Supreme Court resulted in the affirmance of the judgment. In April of 1965 by reason of *Douglas* v. *California*, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811], this court recalled the remittitur. Appellant is now before this court with appointed counsel.

The reporter's transcript reveals that on the night of March 28, 1958, appellant, a dairyman, took Carol, age 12, to his one-room home at the dairy for an overnight stay. Appellant had obtained permission from Carol's mother, telling her that there was to be an Easter party at the dairy that weekend and that other children Carol's age would attend.

Carol testified that appellant made her take off her pajama bottoms, applied vaseline to her vaginal area, and committed sexual acts upon her. In the early morning hours the next day, appellant left the house to work. He told Carol to stay in the house until 10 a.m. at which time she could go out. If anyone asked about her presence, she was to say that she had just arrived.

After appellant left the house, Carol put on her clothes. She found that the door was barred from the outside. She escaped by slitting the screen in the door and removing the bar. Crying and upset, she wandered across the road, met some workers on another dairy and told them what had occurred. The police were then notified.

At about 7 a.m., Deputy Sheriffs S. L. Dalrymple and Theodore Benton arrived at the scene and talked with appellant. Deputy Dalrymple testified that appellant admitted that Carol had spent the night there, but insisted that there was nothing wrong with that because she was his daughter. When informed of the charge Carol had made, appellant insisted that she be examined by a physician to verify his assertion that she had not been molested.

Inside the house, Deputy Dalrymple noticed an open jar of vaseline beside the bed; he did not see any spots on the bed which might be caused by semen.

Theodore Benton, Dalrymple's partner, testified that in the course of the questioning, appellant had stated to Dalrymple that he and Carol had slept in the same bed.

A few hours later, apparently after appellant was arrested, Deputy Sheriff Alfred Brykoski questioned appellant at his home. Appellant stated that he had slept in the same bed as Carol.

Deputy Sheriff J. R. Wagnon, the investigating officer on the case, testified that appellant had told him that he intended to sleep with the girl when he left the home of the mother. There is no evidence when this statement was made.

Appellant, testifying in his own behalf, insisted that he had slept outside in his car that night and that he did not recall making contrary statements to the police. He explained the vaseline by saying he used vaseline to treat a hand he had previously burned with hot lye and the bar on the door because it was the only way to keep it shut.

Although the record does not show an arraignment on the priors, respondent at the conclusion of its case, offered exhibits 1 and 2. The following proceedings were had:

"MR. JOYCE . . . I have exhibited the two items I am about to offer in evidence to counsel.

"THE COURT: Any objection?

"MR. MCPHERSON: None.

"THE COURT: All right. They will be received.

"MR. MCPHERSON: They are on the priors, for the record.

"MR. JOYCE: Upon the acceptance we will rest.

"THE COURT: These will be received in evidence. The State of Wisconsin record will be number 1, and the County of Humboldt in California will be number 2."

On conclusion of defense testimony and prior to proceedings under section 5504 of the Penal Code, the court said, among other things:

". . . The Court . . . finds that the priors as alleged are true."

It appears to be inferable therefore that appellant was arraigned on the priors and pleaded not guilty thereto.

The record affirmatively shows that on the conclusion of the defense testimony on the not guilty phase of the trial, May 21, 1958, the trial court stated it had read a third exhibit, to wit: the report of two court-appointed doctors on the insanity phase of the trial. The following proceedings were then had:

"For the record, the Court has read and considered the report of Dr. Wyers and Dr. Crahan on the issue of the plea of

not guilty by reason of insanity, and I assume you gentlemen will stipulate this may be received and be part of the record.

"MR. McPHERSON: Yes.

"MR. JOYCE: Yes."

The doctors' reports contained detailed facts surrounding appellant's prior convictions, additional detrimental facts in respect of the case at bench and opinions relating to the credibility of appellant.

The trial court, on the suggestion and approval of defense counsel, initiated proceedings under section 5504 of the Penal Code, appellant waived time for sentence, and the trial court appointed two doctors to determine whether appellant was a sexual psychopath.

The case was continued to June 19. On that date the court found appellant to be ". . . a probable sexual psychopath." The probationary sentence and hearing thereupon went off calendar for a period "not to exceed ninety days". On September 19, prior to pronouncing sentence, the court stated, among other things, ". . . You were found guilty as charged. . . . Both priors were found to be true. Doctors were appointed for you under Section 5504 of the Welfare and Institutions Code. . . . You have now been returned to the Court with a report . . . that you will not benefit by care or treatment. . . . The Court has read all matters, the probationary report, the supplemental report and the reports of the doctors." The court thereupon found appellant to be a sexual psychopath who would not benefit by care or treatment and also found that he was a menace to the health and safety of others. Appellant was sentenced in accordance with and for the term prescribed by law.

Appellant contends (1) statements testified to by police officers were in violation of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; (2) the omission in the record to show arraignment on the priors is fatal; and (3) the fact that the record affirmatively shows that the court had read and considered the reports of Doctor Wyers and Doctor Crahan made in respect of the issue of not guilty by reason of insanity, and considered said reports as part of the record on the trial of the not guilty plea, was prejudicial error.

With respect to appellant's first contention, respondent contends that this case was final prior to the rendering of the decision in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and that *Dorado* is therefore inapplicable. *Dorado,* however, holds that cases in which the remittitur has been recalled because of *Douglas* v. *California, supra,* are

considered open for the purpose of applying rules set forth in
*Escobedo* and *Dorado.* (*People* v. *Benavidez,* 233 Cal.App.2d
303 [43 Cal.Rptr. 577] ; *People* v. *Boyden,* 237 Cal.App.2d 695,
697 [47 Cal.Rptr. 136].)

 In applying those rules, we do not find error requir-
ing reversal. The statements made to Dalrymple and Benton
were made during the investigatory stage of the proceedings.
The questions of these officers ''were the justifiable type of
routine inquiries designed to determine what actually hap-
pened, as a means of commencing an investigation.'' (*People*
v. *Jacobson,* 63 Cal.2d 319, 328 [46 Cal.Rptr. 515, 405 P.2d
555].)

Assuming that the statements made later to Wagnon and
Brykoski were during the accusatory stage, their admission
does not require reversal. The statements that appellant had
slept in the same bed with Carol, although damaging, particu-
larly in the light of his defense at trial, did not constitute a
confession. These admissions were substantially repetitions of
the earlier statements which were properly admitted into evi-
dence. The exclusion of the statements taken in violation of
*Dorado* would not have changed the result. (*People* v. *Hillery,*
62 Cal.2d 692, 713 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v.
*Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Appellant next contends that the court erred in admitting
evidence of the priors because the minutes of the court's
proceedings do not show that appellant was ever arraigned on
the truth or falsity of the alleged priors. Penal Code, section
1025 provides in part: ''When a defendant who is charged in
the accusatory pleading with having suffered a previous
conviction pleads either guilty or not guilty of the offense
charged against him, he must be asked whether he has suffered
such previous conviction.''

The section further provides that the defendant's answer
must be recorded in the minutes. If the defendant
admits the priors, their validity is proved and the trier of fact
is not to know of them. If he denies the priors, the trier
of fact is to determine their validity.

The record does not indicate that appellant was asked to
deny or confirm his prior convictions. Appellant argues that
the admission of evidence proving them was prejudicial error
since no issue was raised as to the priors.

Appellant, however, not only did not object to the introduc-
tion of the evidence on the priors (see Witkin, Cal. Evidence
(1958) p. 732), but specifically stipulated to allow it. Evi-

dence which may otherwise be incompetent as proof of the existence of a particular fact may be received for that purpose where a defendant stipulates thereto. (*People* v. *Zavaleta,* 182 Cal.App.2d 422, 430 [6 Cal.Rptr. 166]; *People* v. *Rogers,* 207 Cal.App.2d 254, 260 [24 Cal.Rptr. 324].)

One of the purposes of Penal Code, section 1025, is to ensure that the trier of fact, if priors are admitted, will not be prejudicially influenced in determining guilt on the specific charge upon which a defendant is brought into court. The validity of such priors is relevant only for the purpose of sentencing if the defendant does not contest their validity.

When appellant, through his counsel, stipulated to the admission of evidence proving the priors, the effect of the failure to arraign appellant on that issue, assuming *arguendo* that there was in fact such failure, was waived.

Appellant also argues that the court erred in considering the doctors' report on the issue of insanity prior to pronouncing its judgment on the not guilty plea since the inadmissible evidence as to priors was contained in the report. This procedure, he contends, was directly contrary to the concept of the bifurcated trial required by Penal Code, section 1026.

As we have noted, however, appellant, through his counsel, specifically stipulated to this procedure. In addition, appellant, as we have pointed out, stipulated to the introduction of the record of prior convictions (exhibits 1 and 2) at the conclusion of respondent's case on the charge for which appellant was tried and to which he pleaded not guilty. The priors therefore were before the court with the report of the doctors. It is settled, too, that the right to have guilt and insanity separately tried may be waived by stipulation at least in a case tried without a jury. (*People* v. *Dessauer,* 38 Cal.2d 547 [241 P.2d 238]; *People* v. *McCoy,* 115 Cal.App.2d 565, 567 [252 P.2d 371].)

In *Dessauer,* the court said at page 554: "It is clear from the record that the manner of conducting the trial on the issues and determining the penalty was with the consent of defendant's counsel. He, at no time, made any objection to the procedure. He either tacitly or expressly assented. . . . At least in a case tried by the court without a jury the right to have guilt and insanity separately tried may be waived. (*People* v. *Hazelwood,* 24 Cal.App.2d 690 [76 P.2d 151]; *People* v. *Pettinger,* 94 Cal.App. 297 [271 P. 132].) Those cases have not been disapproved, as claimed by defendant, by the later cases such as *People* v. *French,* 12 Cal.2d 720 [87 P.2d 1014],

setting forth the procedure for separation of the trial of the two issues. Moreover, defendant has not shown he suffered prejudice. (*People* v. *Stroble, supra,* 36 Cal.2d 615 [226 P.2d 330].)''

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1966. Mosk, J., did not participate therein.