66 Cal.2d 1000 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
JOHN RIVERS, Defendant and Appellant.
Crim. No. 10411. 
Supreme Court of California. In Bank. 
July 7, 1967.
 Allan L. Rudick, under appointment by the Supreme Court, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and C. Anthony Collins, Deputy Attorney General, for Plaintiff and Respondent.
 TRAYNOR, C. J.
 John Rivers and two codefendants, Benny Carter and Walter Robinson, were convicted in 1960 of first degree robbery (Pen. Code, 211). [fn. 1] Rivers alone appealed. He abandoned the appeal after his application for appointment of counsel on appeal was denied. The appeal was dismissed in 1961.pursuant to Douglas v. California, 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814], this court in 1965 directed the Court of Appeal, Fourth District, Division One, to recall the remittitur, vacate the order of dismissal, reinstate the appeal, and appoint counsel for Rivers. The Court of Appeal affirmed the judgment of conviction. We ordered a hearing in this court on our own motion to give further consideration to the possible application of Escobedo v. Illinois (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and People v. Dorado (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].
 On March 21, 1960, a San Diego food market was robbed. An employee identified Rivers' car as the one he saw slowly pass the market several times shortly before the robbery. There were three men in the car. Three eyewitnesses identified the two codefendants as the robbers who entered the store. A police officer testified to a conversation he had with Rivers in which Rivers made statements as follows: He denied his guilt but admitted that he drove his car, accompanied by the codefendants, to the market at the time of the robbery. The codefendants discussed past and future robberies on the way to the market. He waited in the car while the codefendants went into the market and returned. He saw both money and guns in the codefendants' possession after the robbery. He admitted that he left hurriedly for Los Angeles at 2:30 a.m. when he heard that the police wished to question him about a robbery.
 Rivers' only contention on this appeal is that in the light of Escobedo v. Illinois, supra, 378 U.S. 478, and People v. Dorado, supra, 62 Cal.2d 338, the court erroneously admitted *1002 the evidence of his statements to the police officer at his trial in 1960.
 In In re Lopez (1965) 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380], we analyzed the interests involved in limiting the retroactivity of the Escobedo-Dorado rules in much the same way the United States Supreme Court did in its later resolution of similar problems. [fn. 2] Although we recognized that the exclusionary rule of Escobedo "sought to eliminate conditions which invited coerced confessions" (62 Cal.2d at p. 372) we concluded that the pre-existing rules were not so deficient as to justify reopening final judgments. Drawing an analogy to earlier state and lower federal court decisions on the retroactivity of the Fourth Amendment exclusionary rule, we concluded that judgments that were final as of the date of Escobedo (June 22, 1964) could not be attacked on the basis of that case. (See also In re Harris, 56 Cal.2d 879, 880 [16 Cal.Rptr. 889, 366 P.2d 305], concurring opinion.) Thereafter, the United States Supreme Court also adopted the final-judgment-date rule to limit the retroactive effect of Mapp v. Ohio (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933] (Linkletter v. Walker, supra, 381 U.S. 618), and of Griffin v. California (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1797]. (Tehan v. Shott, supra, 382 U.S. 406.)
 Well over a year after our decision in Lopez, however, the United States Supreme Court held that Escobedo applied only to those cases in which the trial commenced after the Escobedo decision. That court not only held that the final-judgment-date rule was not constitutionally compelled, but intimated that the decision to invoke that rule in Linkletter and Tehan, instead of a trial-date rule, was dictated by prior actions the court had taken without full consideration and discussion of the retroactivity issue. (Johnson v. New Jersey, supra, 384 U.S. 719, 732.) It further stated, however, that "States are still entirely free ... to apply those standards in a broader range of cases than is required by this decision." (Id at p. 733.)
 Lopez had given broader application to Escobedo than was constitutionally compelled in the interim between Lopez and *1003 Johnson. In People v. Rollins (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221], we reconsidered the effective date for the application of Escobedo in light of the Johnson decision and faced for the first time the issue of the effective date for the application of Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. We chose to follow Johnson in applying Miranda only to those cases in which the trial began after June 13, 1966. (65 Cal.2d at p. 687.) We adhered to the rule of Lopez, however, for the application of Escobedo.
 There are persuasive reasons for preferring a final-judgment-date rule to a trial date rule. [fn. 3] Although these reasons were overcome by considerations relative to the application of Miranda, the application of Escobedo to cases on direct appeal presented different considerations. Of primary importance was the context in which we considered in 1966 the application of Escobedo. We did not face the issue for the first time, and in weighing the potential effects of a departure from our Lopez rule, we noted that "The vast majority of cases in California which had not become final prior to June 22, 1964, have by this time been disposed of on appeal in accordance with the teaching of Escobedo and Dorado. Accordingly, we need not invite the anomalies and the manifest injustice which the rejection of Lopez, at the virtual end of its natural life, would entail." (People v. Rollins, supra, 65 Cal.2d 681, 691.) "[W]e continue to follow Escobedo in the few remaining cases which were pending on direct review when that decision was announced." (Id at p. 691, fn. 10.)
 Cases that were final before Escobedo, but which must now *1004 be reconsidered on appeal, do not arise under the "natural life" of Lopez. They constitute a separate category of cases that threaten to be of significant quantity, and they present considerations different from those in Lopez and are not governed by the rationale of Rollins. This new category of cases was spawned by the disapproval of California's procedure for determining when counsel should be appointed to represent indigent defendants on appeal. (Douglas v. California, supra, 372 U.S. 353; see also Swenson v. Bosler (1967) 386 U.S. 258 [18 L.Ed.2d 33, 87 S.Ct. 996]; Anders v. California (1967) 386 U.S. 258 [18 L.Ed.2d 493, 87 S.Ct. 1396].) Under Douglas, defendants whose convictions were final years ago, having exhausted all routes of appeal, are today afforded the assistance of counsel on appeal in all cases in which it was previously denied. We directed the recall of the remittitur and the reinstatement of the appeal in this case for the sole purpose of affording equality in representation between defendants denied counsel on appeal and defendants who had counsel. (372 U.S. at pp. 355-358.) To apply Escobedo at a reinstated appeal and to review police conduct that occurred years before that decision would not promote equality. To the contrary, "the indigent defendant deprived of counsel anomalously would find himself possessed of more shafts in his quiver than would have been the case had he been able to afford to properly arm himself in the first instance." (People v. Garner (1965) 234 Cal.App.2d 212, 215, fn. 1 [44 Cal.Rptr. 217].)
 Insofar as the additional shaft provided by Escobedo is primarily prophylactic, it is directed at controlling future police conduct, not conduct that was long ago completed and that was then lawful. Retroactive application of Escobedo, regardless of the finality of the judgments of conviction or the voluntariness of the defendants' statements would create the very harms we sought to foreclose in Lopez. It "would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from [such a rule]; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws." (In re Lopez, supra, 62 Cal.2d at p. 381.) *1005
 The serious disruption of the administration of the criminal law that would be caused by retrials and by the denial of the use of statements received in full compliance with the law compels adherence to the rationale of In re Lopez. [1] We therefore hold that the Escobedo-Dorado rules do not apply to reinstated appeals such as this one. Cases in which it has been held or assumed that those rules apply to reinstated appeals are disapproved insofar as they are inconsistent with the views expressed herein (e.g., People v. Jaquish (1966) 244 Cal.App.2d 444, 448 [53 Cal.Rptr. 123]; People v. Boyden (1965) 237 Cal.App.2d 695, 697 [47 Cal.Rptr. 136]; People v. Garner (1965) 234 Cal.App.2d 212, 215, fn. 1 [44 Cal.Rptr. 217]; People v. Benavidez (1965) 233 Cal.App.2d 303 [43 Cal.Rptr. 577]).
 [2] Defendant correctly contends that even if Escobedo does not apply to his case, the rules of Escobedo and Miranda must nevertheless be taken into account on the issue of voluntariness. (Clewis v. Texas (1967) 386 U.S. 707, 709 [18 L.Ed.2d 423, 426, 87 S.Ct. 1338, 1339]; Johnson v. New Jersey, supra, 384 U.S. 719, 730.) [3] Both defendant and the interrogating officer testified to the voluntariness of the statements, and there is nothing in the record to support defendant's contention of involuntariness other than an absence of evidence that he was properly warned. Although we cannot presume from a silent record that proper warnings were given (Miranda v. Arizona, supra, 384 U.S. 436, 475-476, 498-499; People v. Stewart (1965) 62 Cal.2d 571, 580-581 [43 Cal.Rptr. 201, 400 P.2d 97]), a failure to warn standing alone is not sufficient to support defendant's contention that the statements were involuntary (Davis v. North Carolina (1966) 384 U.S. 737, 740 [16 L.Ed.2d 895, 86 S.Ct. 1761]; Pembrook v. Wilson (1966) 370 F.2d 37, 39).
 The judgment is affirmed.
 McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan J., concurred.
 PETERS, J.
 I dissent.
 When appellate courts fix different dates for the operative effect of their decisions in criminal cases involving the same constitutional rights, confusion is bound to result. The instant case adds to that confusion by creating another unnecessary exception to an established rule.
 Until relatively recently it was an established doctrine that *1006 decisions recognizing the existence of constitutional rights were retroactive in the full sense of that word. (Gideon v. Wainwright, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; Hamilton v. Alabama, 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157]; Douglas v. California, 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].) Then this court and the Supreme Court of the United States discovered the device of making such decisions partially retroactive so as to apply only to cases not reduced to final judgment when the rules were announced. (In re Lopez, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380]; Linkletter v. Walker, 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731]; Tehan v. Shott, 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459].) Then, apparently impressed with this newly discovered power, the United States Supreme Court in Johnson v. New Jersey, 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772], held that the rules announced in Miranda v. Arizona, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.LR..3d 974], should apply only to cases tried after the date of Miranda. We followed this decision (People v. Rollins, 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]). Then, just a few weeks ago, the high court went all out and held that the lineup rule, based on the Sixth and Fourteenth Amendment rights, should apply only where the illegal lineup was held after June 12, 1967, the date of its decision. (Stovall v. Denno, 35 U.S.L. Week 4610.)
 In the instant case, the majority opinion adds a new rule to this already overcrowded field of confusion. It first reaffirms the rule announced in Lopez, that the rules of Escobedo and Dorado apply to all cases not yet final when those cases were decided, but then holds that the "finality" there referred to does not apply where the lack of finality is caused by recalling the remittitur. In other words, the majority hold that when a remittitur is recalled, and the judgment set aside because the appellant never had the appeal guaranteed him, and is afforded for the first time a proper appeal, the law in effect when the abortive appeal was decided governs. In other words, we must treat the appeal as if a final judgment had been rendered before the date of Escobedo even though we know no such final judgment exists because the remittitur has been recalled!
 To accomplish this result the majority find it necessary to disapprove four recent cases. (People v. Jaquish, 244 Cal.App.2d 444 [53 Cal.Rptr. 123]; People v. Boyden, 237 Cal.App.2d 695 [47 Cal.Rptr. 136]; People v. Garner, 234 *1007 Cal.App.2d 212 [44 Cal.Rptr. 217]; People v. Benavidez, 233 Cal.App.2d 303 [43 Cal.Rptr. 577].) In these four cases, this court, in denying hearings after decision by the Court of Appeal, had established the rule that where a remittitur was recalled and the second appeal was heard after Escobedo, Escobedo applied.
 In each of these four cases this court passed upon the precise legal point involved here, and then determined, for apparently convincing reasons, that Escobedo applied after the remittiturs were recalled. Such a well settled rule should not be disturbed except for the most compelling reasons. No convincing reasons are offered by the majority.
 The majority opinion is also contrary to the fundamental theory announced by this court in In re Estrada, 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948]. That case held that the law in effect when the appeal is decided, even where the new rule is statutory, governs, and not the law when the act was committed or the case tried. The majority in the instant case by some undisclosed nunc pro tunc process apply the law in effect when the abortive appeal was considered. This is inconsistent and contrary to In re Estrada, supra.
 But of even greater importance the majority completely disregard, in fact do not even mention, the law applicable to the recall of a remittitur. It must be remembered that the remittitur was recalled here because appellant never had a valid appeal--he never had the appeal guaranteed to him, that is an appeal with counsel. The appeal without counsel was abortive and was set aside. The first legal appeal that Rivers has had is the instant one.
 The very effect of recalling the remittitur is to set aside the "final" judgment. The so-called "final" judgment disappears from the case, and the appeal is in the same position as if no appeal had been decided. The theory is that when an appellate court recalls its remittitur it does not "resume" a jurisdiction it has lost, but, because of the facts requiring the recall, it has never lost jurisdiction--that the judgment recalled is a nullity and should be disregarded. (Isenberg v. Sherman, 214 Cal. 722, 725 [7 P.2d 1006]; Trumpler v. Trumpler, 123 Cal. 248, 252 [55 P. 1008].) These principles are disregarded in the majority opinion.
 There are other factors to be considered. Had Rivers had counsel on his first appeal it is conceivable counsel could have raised the very point later decided in Escobedo. The majority deny him that right. Moreover, had the appeal of Rivers been *1008 delayed until after Escobedo was decided, he would, of course, have been entitled to the benefits of that decision under In re Lopez, supra, 62 Cal.2d 368. These possibilities suggest a denial of equal protection in the instant case.
 Once it is conceded that Rivers is entitled to raise the Escobedo point, there can be no doubt that he was interrogated in violation of the rules of that case, and that such violation was prejudicial. At the very least, during his improper interrogation he made damaging admissions. One statement amounted to a confession. This interrogation clearly violated the prejudicial error rule established by Fahy v. Connecticut, 378 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229], and Chapman v. California, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].
 In Fahy v. Connecticut, supra, at page 86, the rule is stated to be that an error is prejudicial unless it can be said that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." In Chapman v. California, supra, 386 U.S. 18, 24, the Fahy case is specifically reaffirmed and the rule restated as "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."
 Once error is established, these rules require a reversal unless the appellate court affirmatively finds that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." In the present case there is more than "reasonable possibility" that the error may have "contributed to the conviction." Certainly it cannot be said that "beyond a reasonable doubt" the error was harmless. That being so the error must be held prejudicial and therefore reversible.
 The fact that Rivers took the stand at his trial and repeated some but not all of the admissions did not immunize the error. Obviously, there is at least a "reasonable possibility" that he took the stand because he had already made the admissions which had been erroneously admitted. (People v. Spencer, ante, p. 158 [57 Cal.Rptr. 163, 424 P.2d 715].)
 I would reverse the judgment for the reasons stated.
 We have reasserted our preference for the final-judgment-date rule in cases calling for limited retroactivity (People v. Charles (1967) ante, pp. 330, 335-337 [57 Cal.Rptr. 745, 425 P.2d 545]), but, as evinced by Rollins itself, we are not bound to a rigid formula when special problems exist. See People v. Bandhauer (1967) ante, pp. 524, 530-531 [58 Cal.Rptr. 332, 426 P.2d 900], in which we adopted the Johnson technique by applying a rule relating to the order of argument only to cases tried after the announcement of the rule (People v. Hill (1967) ante, pp. 536, 564, fn. 7 [58 Cal.Rptr. 340, 426 P.2d 908]).
 The United States Supreme Court has reaffirmed its commitment to a flexible approach to problems of retroactivity to meet the "exigencies of the situation" in adopting in Stovall v. Denno (June 12, 1967) 35 U.S.L. Week 4610, 4611, a fourth alternative (right to counsel at lineups applicable only to confrontation for identification purposes conducted after Stovall.)
NOTES
[fn. 1] 1. Robinson pleaded guilty to the offense. Rivers and Carter were jointly tried and found guilty by a jury.
[fn. 2] 2. Compare the analysis of In re Lopez, 62 Cal.2d 368, 372-381 [42 Cal.Rptr 188, 398 P.2d 380], with that in Linkletter v. Walker (1965) 381 U.S. 618, 636-640 [14 L.Ed.2d 601, 85 S.Ct. 1731]; Tehan v. Shott (1965) 382 U.S. 406, 413-419 [15 L.Ed.2d 453, 86 S.Ct. 459]; Johnson v. New Jersey (1966) 384 U.S. 719, 726-732 [16 L.Ed.2d 882, 86 S.Ct. 1772].
[fn. 3] 3. See generally Mishkin, The Supreme Court, 1964 Term--Foreword: The High Court, the Great Writ, and the Due Process of Time and Law (1965) 79 Harv.L.Rev. 56.