[Crim. No. 8908.    Second Dist., Div. Two.    Sept. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNY LEE CURRY, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Pursuant to mandate of our Supreme Court to proceed in accord with *Anders* v. *California,* 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] and *People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21], we have recalled our remittitur and vacated our unpublished opinion heretofore filed on September 16, 1964 (petition for hearing denied November 10, 1964), affirming judgment in this case. Appellant Curry was charged jointly with Abdelkader and Burns with robbery in one count and assault with a deadly weapon with intent to commit murder in a second count. He was tried to a jury with Abdelkader[1] and found guilty of robbery as charged and the degree of the offense fixed as robbery of the first degree and on the second charge found guilty of assault with a deadly weapon, a lesser necessarily included offense. He appeals from the judgment.

The pertinent facts are:

Curry, with Abdelkader and Burns, on June 13, 1962, just prior to 2 a.m., drove to a liquor store in the vicinity of Vermont Avenue and Venice Boulevard in Los Angeles. Abdelkader entered the store, made a purchase, departed, and stood on the sidewalk. Burns then entered, followed by Curry. Burns produced a gun, which Abdelkader admitted was his. One of the two men ordered the clerk to "Lay down," and said "We don't want no trouble out of you." The clerk testified that while lying on the floor, he observed Burns was holding the gun in his right hand, and he saw another right hand to the right of the gun exploring the cash register. Burns demanded and was given a box containing cash, and the clerk's wallet. An off-duty police officer who was at the time passing the store in a car, testified he observed Curry in the store reaching over the counter and taking things which he could not identify. He also noticed Burns reaching over and taking things near the cash register. Abdelkader left the scene, followed shortly thereafter by Curry. Burns remained in the store. The officer drove his car in front of the store and as Burns emerged, he identified himself as a police officer and

[1]Burns, the third defendant, was hospitalized at the time, and the trial, by stipulation of all counsel, proceeded without him.

ordered Burns to put his hands up. They exchanged shots and Burns ran away. It was later discovered Burns had been shot.

Curry testified he went in the store to buy a pack of cigarettes, denied taking anything, and that he was as surprised as the clerk when Burns produced a pistol. When he saw the pistol, he left the store.

Two other witnesses testified that they saw Abdelkader and Curry standing on the sidewalk in close proximity to the liquor store, go into the store and that almost immediately thereafter they heard gun-fire.

Burns' girl friend testified she was present when all three participants in her apartment discussed the proposed robbery, and that Abdelkader showed her his gun. Abdelkader testified all three men were going to a party at which girls were to be present, and the story of the robbery was a fabrication to conceal this fact from the girl friend of Burns. However, none of the three went to any party, but instead drove directly to the vicinity of the liquor store. There was ample parking space in front of the store, but Burns parked the car he was driving around the corner.

Curry testified he was asleep most of the time he was in the apartment and heard nothing about the proposed robbery, and when all three left, he slept in the auto en route to the liquor store.

An oral confession of Abdelkader shown to be voluntary in all respects implicated Curry only in showing that he was in the car and thereafter Curry met him at the house of Burns' girl friend.

The court admonished the jury prior to the introduction of the confession that it was not being admitted against Curry but only against Abdelkader. An instruction was given that a confession should be viewed with caution, and two instructions that the confession was not to be considered against Curry.

The record shows that in the trial court and on the first appeal the primary question presented was whether Curry was a participant in a planned robbery or a surprised and spontaneous witness to a robbery committed by Burns alone. Errors claimed on the original appeal were directed to fortify the premise that Curry was a surprised witness to a robbery committed by Burns alone.

Curry took the witness stand and testified independently of Abdelkader's confession or the testimony of anyone else that after having entered the car with Abdelkader and Burns

and after having fallen asleep in the back seat, in pertinent part as follows:

"A. The next thing I remember Burns was waking me up. And he had already parked. When I woke up I looked around, and we was parked. . . . Q. Do you recall where you were parked? A. No, I don't, . . . And he told me, . . . 'Abdelkader has gone in to get some liquor.'

"And I say I want to get some cigarettes. I said, 'Did you tell him to get some cigarettes?' He said, no. But we could go get them. So, we got out of the car and proceeded to the liquor

". . . . . . . . . . . . . . . . . .

"Well, at this time, . . . Burns stepped forward in front of me. Then I immediately turned to proceed behind him, and as I walked in across the door that's when I observed that Burns had pulled this obstacle out. Q. Who pulled what? I am sorry. . . .

"A. That's when I observed that Burns had pulled out this object which looked to me as a pistol. And upon this, when I looked and saw him, naturally by me being in trouble and having a bad record. Q. What did you do, . . .? A. Well, I immediately turned and proceeded out of the store at the time. And as I come out the store, I noticed that Herman Abdelkader was standing staring in the window, and I left him there standing staring in the window."

". . . . . . . . . . . . . . . . . .

"Q. After you left the scene you eventually met Mr. Abdelkader, isn't that right? A. Oh, yes, again, yes. Q. Isn't it true that both of you returned to the apartment where Annette Dobson was? A. Yes. Well, when I met him I had to—I went by my house, and my brother-in-law was with me, . . . ."

Curry contends the Abdelkader confession violated *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Those cases were decided June 22, 1964, and January 29, 1965, respectively.

Abdelkader, the confessor is not before this court. His conviction on appeal became final on March 31, 1964, before either *Escobedo* or *Dorado* were filed. His confession was voluntary in all respects and obtained in accordance with pre *Escobedo-Dorado* rules. Abdelkader's confession was therefore properly used against him. If Abdelkader were before this court on a reinstated appeal, as is Curry, we would be precluded from applying *Escobedo-Dorado*. (*People* v. *Rivers*, 66 Cal.2d 1000, 1005 [59 Cal.Rptr. 851, 429 P.2d 171].)

Curry's first appeal was not final prior to the pronouncement of *Escobedo-Dorado* rules, and the doctrine of those cases did therefore apply to him. Curry, however, made no confession and the jury was properly instructed prior to the admission of the Abdelkader confession and at the time of formal instruction as heretofore pointed out.

█ Conceding that the use of Abdelkader's confession "infected" Curry's trial (*Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]) and that "The risk of prejudicing the nonconfessing defendant can no longer be justified by the need for introducing the confession against the one who made it" (*People* v. *Aranda,* 63 Cal.2d 518, 526 [47 Cal.Rptr. 353, 407 P.2d 265]; (November 12, 1965) *People* v. *Charles,* 66 Cal.2d 330, 343 [57 Cal.Rptr. 745, 425 P.2d 545]; (April 4, 1967)), amounts to error, such use is not necessarily prejudicial error. █ We know of no case and we are cited to none which compels automatic reversal because of the mere introduction of the confession of a codefendant in the trial of a nonconfessing defendant when the confessing defendant testified and proper instructions were given.[2] Free of *Aranda* and *Charles* rules, which had not been pronounced until after the original Curry judgment was final and which we treat *infra,* and under those rules, the record must show prejudicial error to entitle Curry to a reversal.

All of the essential incriminating statements in Abdelkader's confession as to Curry were substantiated by Curry and the evidence of other witnesses. Burns' girl friend testified that Curry and his two codefendants planned the robbery in her apartment. The police officer identified Curry as the person reaching over the liquor store counter taking things and putting them in his pocket. The clerk of the liquor store while lying on the floor at the direction of Burns, saw two right hands, one holding a gun, and the other reaching over the counter and taking things from the cash register. Since Curry testified that Burns was holding the gun, and that he was in the store with him at the time, the inescapable conclusion, especially when combined with the testimony of the police officer is that the second right hand belonged to Curry.

---

[2]The court in *Bruton* reverses because of the use of a confession of a codefendant against a nonconfessing defendant, but in that case the confessor did not take the stand and confront the other defendant, thus subjecting himself to cross-examination. At bench, Abdelkader, the confessing defendant, did take the stand and Curry's counsel had the opportunity to cross-examine, but did not exercise it. *Bruton* emphasizes the lack of confrontation as a violation of a defendant's Sixth Amendment rights.

■ Curry contends in addition that he made exculpatory statements to the police without advice as to his *Escobedo* rights. His original appeal was pending when *Escobedo* was filed. *Escobedo* rules did therefore apply at the time of his original appeal. Since this is a reinstated appeal, there is some doubt because of *Rivers* whether *Escobedo* rules do not apply. We treat the question posed as if they do. The record shows:

''Q. Did you make any statement to the officers?

''A. No, sir. For the simple reason why I told the officers when I was arrested, they asked me did I know of the two defendants, Burns and Abdelkader. And at the time I didn't know the defendant Abdelkader by the name of Abdelkader. I only knew him by the name of Jack, and I didn't know the defendant Burns by name.

''*So, naturally I told him no, I didn't know them. And I told him that I would like to consult a counsel, or somebody that I could talk this thing over with, before making any type of statements.* (Italics added.)

''And that was why I gave no statement or nothing to the police.

''Q. All right. Did you at any time have information that a robbery would be committed?

''A. No, I didn't.

''Q. When was the first time that you realized that perhaps a public offense was being committed?

''A. As I say, as I had turned and started into the store behind defendant Burns, which he had already reached to the counter where the man were [*sic*], the gentleman of the store. And this is when I seen him flash this object. And at this time knew it was something was wrong.

''Q. Did more than one police officer speak with you?

''A. Yes, it did. Yes.

''Q. Did you at any time tell any police officer that you had any knowledge of this offense?

''A. No, no, I didn't make any statements at all, sir. No, sir.''

Exculpatory statements are within the ambit of *Escobedo*. The statements were obtained and admitted contrary to *Escobedo*.

The jury, however, was not required to rely on the exculpatory statements to doubt the credibility of Curry. His credibility was completely shattered by the testimony of the codefendant's girl friend, and the two eyewitnesses, whose testimony has been previously discussed at length herein.

Under *Fahy* v. *Connecticut,* 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229], as exposited by *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824], there must be a showing that there is a reasonable possibility that the Abdelkader confession or the exculpatory statement or both, contributed to Curry's conviction. We are convinced beyond a reasonable doubt that Curry would have been convicted if the confession or the exculpatory statements or both were not a part of the record.

Curry urges, however, that even though *Escobedo-Dorado* rules do not require reversal, that the rules with respect to confessions enunciated in *Aranda,* specifically made retrospective by *Charles,* do require reversal.

There is no doubt *Aranda* rules were not followed. However, the judgment against Curry on the first appeal was final prior to the filing of *Aranda.* ▮ *Rivers* specifically holds that *Escobedo-Dorado* rules are not applicable to reinstated appeals. *Aranda* rules are not mentioned in *Rivers,* but we believe the reasoning of *Rivers* precludes the application of *Aranda* rules to reinstated appeals and that Curry does not have the benefit thereof on this reinstated appeal. Assuming arguendo, however, that *Rivers* does not so limit the retrospectivity of *Aranda* rules, there must be a showing of prejudicial error before failure to apply *Aranda* rules will justify reversal. (*People* v. *Charles, supra.*)

▮ On the record before us which we have analyzed above, we find no prejudicial error resulted from a failure to apply *Aranda* rules. (Art. VI, § 4½, Cal. Const., (presently § 13); *People* v. *Watson,* 46 Cal.2d 818, 835-836 [299 P.2d 243].)

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.