[Crim. No. 568.   Fifth Dist.   Dec. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES CABRELLIS, Defendant and Appellant.

Milton L. McGhee, under appointment by the Court of Appeal, and Colley & McGhee for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Gordon F. Bowley, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, James Cabrellis, appeals from his second successive conviction of the first degree robbery charged in the information. The first adverse judgment was reversed on appeal by the Court of Appeal, Third Appellate District, because of what it held to be an erroneous account in the testimony of a Sacramento police detective of a conversation with the accused. In this second trial, the prosecution avoided the pitfall in question, and nothing is said in the appeal concerning it.

The sole issue raised by appellant now is whether, under the facts of the case, the lineups conducted by the police department were ''so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied due process.'' After a careful examination of the entire record, we are convinced that the evidence before the jury was sufficient to warrant its implied finding against the defendant. It should be kept in mind, of course, that a Court of Appeal does not retry a case by passing on conflicting evidence. Its duty is fulfilled if it determines, as we do here, that there is substantial evidence to justify the conviction.

While prosecution witnesses were in some respects rather hazy in their several early attempts to identify the defendant, there was evidence based on their experience and their views of the defendant in the courtroom that led them to his final positive identification as one of the guilty participants in the first degree robbery. We cannot legitimately second-guess the jury.

Dalton James Lyons testified that on February 23, 1966, he was driving his own car, a 1955 Ford, about North Sacramento, with Duane Perry in the front seat with him, and two other young men in the back seat, James Cabrellis and Roger Williams. The car passed Cliff's Market at Ford and Taylor

Streets and was temporarily parked in the vicinity. Lyons testified that he heard mention of a robbery from the back seat and, as he did not want any part of it, he started his car and drove off, going about two blocks, when the other occupants of the car said they were "just kidding"; Cabrellis said he wanted to get something to drink, and the driver went around the corner and came back to the vicinity of the market. He parked his car by the store; Lyons heard certain noises from the rear seat of the car which sounded to him like the clicking from loading pistols; the defendant and Williams got out and went to the back of the automobile where they talked. Perry then alighted and also went to the back and gave something to the other two, although Lyons said he did not see what it was. Williams and Cabrellis then went into the store; both men had on head scarves. They were only inside for two or three minutes and then came out at a fast walk. They got in the car, and it moved away. Lyons drove to a service station, and Williams gave him $5 to pay for gasoline, after which Lyons took them to their house on Seventh Avenue. As he left the market, Williams had a gun as did Cabrellis and Perry. Lyons noted that a woman in a stationwagon drove up to Cliff's Market just prior to the entry of the two young men as above mentioned; she was alone and parked in back of Lyons' car; she got out of her automobile and went into the store, then came out, looked at all of them again, and got in her car and drove off.

Mrs. Mary Ann Williams, the victim of the robbery, testified that she and her husband owned a small grocery store at 3400 Taylor Street in North Sacramento; in the late afternoon of February 23, 1966, at about 5 o'clock, two Negro young men came into the store; one was lighter than the other; the first one asked for a package of Salem cigarettes, and when she tendered it, he pulled a pistol from under his belt and said, "I want all of your money." She opened the register and the men both reached in and got the money. The first individual had a bandana on his head—a kind of silk scarf. The robbers then told her to lie down on the floor and gave the same command to a 17-year-old Sacramento Bee carrier, who had entered the store to leave the paper. The two robbers left, and, after about two minutes, she called the police. Thereafter, at intervals of three or four days, she went to the police department to see three successive lineups. In the first two, she made tentative selections, but made it clear that she was not sure of her identification. On the third and last line-

up, she selected the defendant and was quite positive of the identification.

On this appeal, it is asserted by defense counsel, neither of whom participated in the trial, that the defendant was in all three lineups. But the record indicates the contrary, and the Attorney General positively states in his brief that the defendant was not in the first two lineups but only in the third. Based on the mistaken allegation that the defendant was in all three lineups, his counsel argue that Mrs. Williams must have concluded that the police did not approve of her tentative identification of other men than the defendant in the first two lineups, and was thereby subtly told by the police to point the finger of suspicion at the defendant. A careful examination of the record leads us to conclude that the Attorney General is right in his statement that the record shows that the defendant was not in the first two lineups. Mrs. Williams was asked the question whether Cabrellis was in either one of the first two lineups, and she said that as soon as she saw the man (and she thought it was the third lineup) she knew it was he. The identification by Mrs. Williams in court was made from a memory of the person at the time of the robbery. She remembered Cabrellis as the man who pointed the revolver at her and asked for the money.

Another witness, Lillian Marshall, the woman who drove up to the store shortly before the robbery, and who secured the license number of the Lyons car, identified the appellant as one of the men who entered the store, presumably from her memory of what she saw at the scene of the robbery.

In *People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21], Mr. Chief Justice Traynor stated that the question presented was whether the court should apply the rule of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *State of California,* 388 U.S. 263 [18 L. Ed.2d 1178, 87 S.Ct. 1951], requiring assistance of counsel at lineups, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, to all cases still pending or restrict that rule to showups occurring after *Wade* and *Gilbert* were decided on June 12, 1967. The court concluded that for the same reasons that led the United States Supreme Court in *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], to permit only prospective operation of the *Wade* and *Gilbert* rule, the rule should operate only prospectively as a matter of state law. (See *People* v. *Rivers,* 66 Cal.2d 1000 [59 Cal.Rptr. 851, 429 P.2d 171] ; *People* v. *Charles,* 66 Cal.2d 330 [57 Cal.Rptr. 745, 425 P.2d 545] ; *People* v. *Rollins,* 65

Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) The question of the absence of counsel at the showups was not raised in this case. The court in the *Feggans* case, as well as in the *Stovall* case, scrutinized the record with respect to the showup to determine whether the defendant was denied due process by the part that identification played in his conviction. The *Feggans* opinion noted that two of the witnesses were shown four or five pictures, including defendant's before the showup and identified him from the pictures, as well as at the showup; there was no evidence that the pictures were used to prime the witnesses to identify defendant, and the showup itself appeared to have been conducted with "scrupulous regard for fairness"; Mr. Chief Justice Traynor's opinion concluded that the procedure did not deny defendant due process.

In *People* v. *Noisey*, 265 Cal.App.2d 543, 544 [71 Cal. Rptr. 339], in an opinion written by Mr. Justice Stone of this court, it was noted that the right to counsel at the lineup was not in issue as the cases requiring such were given prospective application only, but that defendant contended in the *Noisey* case that the lineup resulted in such unfairness that it infringed his right to due process, citing the *Stovall* case, *People* v. *Harris*, 67 Cal.2d 866 [64 Cal.Rptr. 313, 434 P.2d 609], and *People* v. *Caruso*, 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]. Defendant argued in the *Noisey* case that the lineup was composed of six inmates of the county jail, who were defendant and his brother, one man of light complexion, and three men of Mexican descent. In the opinion, it is said: ". . . from the printed page, this strikes one as contrived to focus attention on defendant, who is not of Mexican descent, but an examination of the lineup pictures received in evidence discloses there is little difference in appearance, particularly in complexion, between defendant, his brother and the men of Mexican descent. Defendant appears to have some of the characteristics of an American Indian and bears a striking physical resemblance to two of the three Mexican Americans." The opinion further held that the "in court" identification of defendant was based upon a recollection of the defendant at the scene of the crime and completely independent from the lineup identification.

In *People* v. *Laursen*, 264 Cal.App.2d 932, 943 [71 Cal. Rptr. 71], this court had discussed the lineup situation and noted that cases requiring the right of counsel at the lineup were applied only prospectively. And, while defendant was entitled to relief if he could show that the lineup was

unnecessarily suggestive and conducive to irreparable mistaken identification so that he was denied due process of law, there were various factors to be noted and applied—''the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.'' (See also *People* v. *Caruso, supra,* 68 Cal.2d 183.)

We conclude that there has been no lack of due process in this case. The trier of fact obviously found from all of the evidence that the defendant was one of the robbers. This court, even if it were able to say that the evidence might also be reconciled with appellant's innocence, may not disturb the determination of the trier of fact. (See *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

The *Caruso* case, *supra,* 68 Cal.2d 183, held that in ''. . . a pre-*Wade* and *Gilbert* case, before defendant may invoke an exclusionary concept he must demonstrate that the lineup 'resulted in such unfairness that it infringed his right to due process of law.' '' Defendant has not carried out this burden; while defense counsel state that defendant was in all three lineups, they do not show that this claim is supported by the record; the transcript indicates he was only in the third.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.