[Crim. No. 1591. Fourth Dist., Div. Two. Aug. 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ALFRED WEST, Defendant and Appellant.

William A. Dougherty, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard G. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

KERRIGAN, J.—Defendant was charged by information with the crimes of robbery (Pen. Code, § 211) and auto theft (Veh. Code, § 10851), with two prior felony convictions. He was found guilty of first degree robbery and auto theft, and the jury further found the allegations as to the two prior convictions to be true. Defendant was sentenced to state prison, and the sentences thus imposed were ordered to run consecutively as to each count.

Defendant, through his trial counsel, filed a timely notice of appeal on March 13, 1961. On August 9, 1961, the clerk of this court advised defendant's counsel that unless an opening brief was filed within 30 days thereafter that the appeal would be dismissed pursuant to the provisions of rule 17(a) of Rules of Appeal. On October 2, 1961, the appeal was dismissed for failure of appellant's counsel to file an opening brief within the time prescribed. In February 1965 defendant submitted, *in propria persona,* a petition for recall of the remittitur, and the California Supreme Court ordered recall of the remittitur, thus reinstating this appeal from the judgment.

On September 29, 1960, between 7:30-8 p.m., two men robbed Patton's Market in Fullerton, California, and escaped with $690. Both men wore disguises consisting of sunglasses, baseball caps, band-aids on their noses and chins, and facial makeup. One bandit utilized a small silver or chrome-plated gun in the theft and was physically described as being 5'10" tall and weighing approximately 168 pounds. The second bandit was 6 feet in height and weighed approximately 165 pounds. One of the robbers was attired in a white shirt.

On the same day a bank official's car was stolen from a Fullerton bank parking lot, and this 1953 Chevrolet convertible was found the following day by the Fullerton police authorities. A baseball cap was discovered in the rear seat of the vehicle. A latent fingerprint was found in the stolen car, which was later identified as that of an ex-convict with whom the defendant was living at the time of his arrest. Further investigation resulted in the finding of a rubber glove worn by

one of the robbers some 60 feet distant from where the car was located.

Defendant was a parolee, having been released from state prison only one and one-half months prior to the Fullerton robbery and auto theft. His parole officer was informed that a robbery had been committed in a Fullerton market by a person whose description resembled that of the defendant. The parole officer was further aware that although the defendant was unemployed, he was spending sizeable sums of money for clothing and living expenses. The officer further knew that defendant was living and associating with an ex-convict, one Roger Flippen, in violation of his parole conditions. The parole agent relayed the information concerning the possible resemblance between the defendant and the market robber to the Fullerton police authorities. Subsequently, on a visit to defendant's residence, the parole agent persuaded the landlady to permit him to conduct a search of defendant's room. The parole officer did not have a search warrant. In the process of the search, the officer discovered a white shirt with pancake makeup on the collar and some used band-aids with no blood or skin on them. These findings were immediately reported to the Fullerton police, who had previously taken the baseball cap found in the stolen car to the home of the defendant's landlady. The landlady had informed the Fullerton authorities when they visited her residence that the cap looked similar to one that had belonged to her deceased son.

In the early morning hours of October 21, 1960, the defendant was arrested, and at the time of his arrest he spontaneously inquired as to whether the officers intended to talk to him about the market robbery. After being booked and briefly interrogated, he was allowed to sleep for several hours and then questioned in mid-morning for a period of an hour. He denied any implication in the robbery. Later in the day he voluntarily took a polygraph test, the results of which tended to indicate defendant's guilt, but were inconclusive because defendant had coughed periodically during the examination. Later the same day, at approximately 9 p.m., the defendant was again interrogated and made an oral statement concerning his involvement in another market robbery at Anaheim, California, and later confessed to the Fullerton robbery and the auto theft here involved.

The following Monday. October 24. 1960. the defendant was further interrogated, and a statement was prepared for his

signature, wherein he confessed to the commission of both crimes. The stenographer, in preparing the written statement, inserted the following language in the document before it was signed by defendant: "I, James Alfred West, voluntarily make the following signed statement to Sergeant Smith and Officer Avaloz; I make this statement in the absence of any threat or promises; I have been advised I do not have to make any statement and any such statement I now make may be used against me in court; I have also been advised of my right to have an attorney."

Notwithstanding the foregoing declarations, there is no evidence that the defendant was ever advised of his constitutional rights to counsel or to remain silent before his verbal confession of October 21, 1960, or prior to making his verbal and signed confessions of October 24, 1960. During the course of the trial, one of the interrogating officers was permitted to testify to the following effect on direct examination conducted by the prosecution: That he arrested the defendant about 12:30 a.m. on October 21, 1960, in Anaheim; that he took the defendant to the Fullerton police station, booked him, and placed him in a cell; that at 10 a.m. the same morning, he conversed with the defendant with another detective present, and no promises of immunity nor threats were made; that the interrogation lasted one hour, and the defendant denied any involvement in the robbery; that again, at approximately 7 p.m. of the same day, the defendant was interrogated; that five officers were present; that no promises nor threats were made; that initially the defendant again maintained his innocence; that the defendant was informed that he should not confess to anything that he did not do, but that he should tell the truth; that during this interrogation, the defendant confessed to the robbery of the Anaheim market and admitted that at the time of the latter offense he was wearing a baseball cap, sunglasses, and armed with a nickel-plated revolver; that the defendant then confessed to the robbery of Patton's Market, Fullerton, California, and further acknowledged that he had utilized a stolen car in the commission of the Fullerton robbery; that following the confession, the defendant indicated that he did not wish to involve his roommate, Roger Flippen, in the robberies, and requested that no charges be filed against the accomplice; that subsequent to the defendant's oral confession, his oral statement was reduced to typewritten form, but the typed statement was not signed until the following Monday.

The record discloses that at this point in the direct examination of the officer the prosecutor was in the act of presenting the defendant's signed confession to the officer for foundational purposes when defense counsel requested permission to conduct a *voir dire* examination of the officer for the purpose of determining the voluntary or involuntary nature of the defendant's extrajudicial statement. The court then indicated that defense counsel could interrogate the officer on cross-examination relative to such issue, and permitted the prosecutor to proceed with his direct examination.

The officer then testified, in the course of his continued direct examination, to the effect that the defendant's statement was signed by him on Monday morning, October 24, 1960, and that no threats nor promises were made to the defendant for the purpose of securing the signature on the document.

Defense counsel then objected to the admission of the signed confession, but the objection was overruled. It should also be noted that defense counsel made a motion to strike the testimony of the interrogating officer relative to the defendant's oral and written confessions, which motion was submitted after the defendant had testified that he was not allowed to read the confession before signing it, and that the confession was signed by him solely on the condition that Roger Flippen would not be charged with the Fullerton robbery. The motion to strike was denied.

Defendant's testimony during the trial may be summarized in the following manner: That he did not read the typewritten confession before signing it; that he agreed to sign the confession because he thought he would be sent back to prison anyway; that he did not want Roger Flippen implicated in the robbery charge, and therefore signed the prepared statement on the condition that Roger would not be charged with robbery; that he had a white shirt similar to the one found in his room; that he owned a khaki jacket and pants similar to those described by the robbery victim; that he shared an apartment with Roger, an ex-convict; that he could not explain the source of funds which enabled him to move from the room where the shirt and band-aids were found into another apartment, nor where he obtained the funds to purchase the new clothing inasmuch as he never received any income from the time he was released from prison until the time of his arrest; that his convict-friend was not employed;

that before he made any statements to the police that it had always been his policy never to ''cop out'' to the police authorities or make any admissions of any kind, and this knowledge was acquired by reason of his frequent contacts with law enforcement officials and his past experience in being incarcerated in numerous juvenile homes and jails.

The issues raised on appeal may be categorized as follows: (1) Whether there was reasonable or probable cause for searching defendant's room; (2) Whether the court's action in reading the allegations of prior convictions to the jury was proper; (3) Whether defendant's confession was admissible or whether it was the product of an ''illegal detention''; (4) Whether the failure of law enforcement officers to advise defendant of his constitutional right to counsel and to remain silent precludes admission of the signed confession; and (5) Whether the confession was voluntary.

 The defendant was on parole at the time his room was searched and at the time of his apprehension and arrest. A parolee does not stand discharged from prison, but merely serves the remainder of his sentence outside rather than within the prison walls; he is at all times *in custodia legis* and his physical apprehension by a police officer is not an arrest. (*People* v. *Quilon,* 245 Cal.App.2d 624, 627 [54 Cal. Rptr. 294].) A search of a parolee's premises by his parole supervisor is not to be tested by the rules which apply to citizens who are possessed of full civil rights. (*People* v. *Quilon, supra*; *People* v. *Hernandez,* 229 Cal.App.2d 143, 150 [40 Cal.Rptr. 100], cert. den. 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810].) A parole officer needs neither a search warrant nor consent of a parolee in order to search the latter's premises. (*People* v. *Gastelum,* 237 Cal.App.2d 205, 208-209 [46 Cal.Rptr. 743] ; *People* v. *Denne,* 141 Cal.App.2d 499, 510 [297 P.2d 451] ), nor does the requirement of reasonable or probable cause apply to a search conducted by the parolee's supervisor. (*People* v. *Hernandez, supra,* pp. 150-151.) The defendant's parole agent was justified in entering the defendant's room for the purpose of conducting a search. The fruits derived as a result of the search consisted of used, unmarked band-aids and traces of pancake makeup on the defendant's white shirt. This evidence, when combined with the other factors, consisting of the discovery of the baseball cap of the deceased son of the defendant's landlady in the stolen car, the information as to the defendant's physical resemblance to the Fullerton market robber, his spending of large sums of

money without any visible means of support, and his association with an ex-convict, Roger Flippen, was of a sufficient quantum to justify the defendant's arrest.

 It is next maintained that the procedure whereby the trial judge read the allegations as to the defendant's two prior felony convictions to the jury constituted prejudicial error. The contention lacks merit. The method whereby the jury is informed of the defendant's prior record by the reading of the information or indictment containing allegations of the defendant's prior offenses does not offend the "due process" requirements of the United States Constitution, and is within the statutory power of the states to promulgate their own rules of evidence and to try their own state-created crimes in their own state courts; such so-called recidivist statutes, similar in nature to the provisions of section 1025 of the Penal Code of the State of California, which require the defendant to admit or deny prior felony convictions before trial on the issue of guilt or innocence relating to the principal charge, are constitutionally valid. (*Spencer* v. *Texas,* 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648].) Inasmuch as the defendant denied the allegations of the two prior convictions, the trial court was required to read the allegations of the two prior felony convictions to the jury in order that the jury could ascertain the truth or falsity of the allegations.

The defendant was arrested on Friday, October 21, 1960, at 12:30 a.m. Later the same day, at 7-8 p.m., he orally confessed to the commission of both crimes. He signed a written confession at 10 a.m. the following Monday, October 24, 1960. His arraignment followed on Monday afternoon. The defendant now contends that the confession was inadmissible since it was a product of an "illegal detention."

 "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; . . ." (Pen. Code, § 825.) Failure to arraign a defendant within two days after his arrest may constitute an unlawful practice inasmuch as such police conduct cannot be condoned and will be subjected to close scrutiny. (*People* v. *Powell,* 67 Cal.2d 32, 61 [59 Cal.Rptr. 817, 429 P.2d 137].) A confession obtained during an illegal detention is *ipso facto* inadmissible under federal rules. (*McNabb* v. *United States,* 318 U.S. 332 [87 L.Ed. 819. 63 S.Ct. 608].) But such a rule has not been adopted in California. (*Rogers*

v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929] ; *People* v. *Hall,* 62 Cal.2d 104, 108 [41 Cal.Rptr. 284, 396 P.2d 700].) However, under section 825 of the Penal Code, the defendant must be brought before a committing magistrate within 48 hours from the time of his arrest "excluding Sundays and holidays." Saturday is a court holiday. (Gov. Code, § 72305; *People* v. *Ross,* 236 Cal.App.2d 364 [46 Cal.Rptr. 41] ; *People* v. *Mitchell,* 209 Cal.App.2d 312, 320 [26 Cal.Rptr. 89], cert. den. 374 U.S. 845 [10 L.Ed.2d 1065, 83 S.Ct. 1902].) Therefore, excluding Saturday and Sunday, there was compliance with the two-day arraignment statute inasmuch as the defendant was arrested on Friday, his signed confession was obtained at 10 a.m. on Monday, and he was promptly arraigned on Monday afternoon.

The defendant herein was convicted on March 10, 1961, and his appeal was dismissed in October 1961 by reason of his counsel's failure to file an opening brief. Between October 1961 and February 26, 1965, the defendant failed to take any action with respect to his appeal, but on the latter date, the defendant, acting *in propria persona,* filed a petition for recall of the remittitur, and the California Supreme Court granted the petition, thus reinstating the appeal. The defendant herein maintains that in the light of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], the trial court erroneously admitted his confession during the course of his trial in March 1961. Manifestly, the interrogating officers in the case under review did not give the *Escobedo-Dorado* admonitions inasmuch as the cautionary rules adopted in these decisive cases were not even in existence during the defendant's trial.

Obviously, the California Supreme Court directed the recall of the remittitur and the reinstatement of this appeal for the sole purpose of affording the defendant with legal representation on appeal, in accordance with the constitutional mandate enunciated in *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]. While the *Douglas* principle involved indigent defendants who had been denied counsel on appeal, the defendant herein was denied the effective assistance of counsel on appeal as reflected by his counsel's failure to file an opening brief on appeal, which omission resulted in the dismissal of the original appeal in 1961. (Cf. *People* v. *Rivers,* 66 Cal.2d 1000, 1004 [59 Cal.Rptr. 851, 429 P.2d 171].) Following the recall of the remittitur and the reinstatement of this

appeal, capable counsel was appointed for the purpose of representing the defendant in this court.

It was only recently decided that the *Escobedo-Dorado* rules do not apply in retrospect fashion to reinstated appeals of cases in which the judgment became final prior to June 22, 1964, and in which the defendant was denied counsel in connection with his original appeal. (*People* v. *Rivers, supra.*) The rationale for the judicial reluctance to grant retroactivity to the *Escobedo-Dorado* rules in the case of a reinstated appeal is sound inasmuch as retroactivity "would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available; [m]any hardened and dangerous criminals would glean the greatest benefit from [such a rule] ; they serve lengthy sentences imposed long ago ; the cases thus offer the least likelihood of successful retrial; [t]o require a general release of persons of undoubted guilt would be to cripple the orderly administration of the criminal laws.'' (*People* v. *Rivers, supra; In re Lopez,* 62 Cal.2d 368, 381 [42 Cal.Rptr. 188, 398 P.2d 380].)

In the case under review the defendant has been an inmate of the state prison system since 1961, a period of some six years. To extend him the benefits conferred by the *Escobedo-Dorado* rules would be to grant him a defense which would not have been available to him at the time of trial, and would make him the beneficiary of a right which was not enjoyed by other defendants who suffered convictions in the late 1950's and early 1960's and diligently prosecuted their appeals.

The defendant finally urges that his confession was involuntary and that the trial judge committed prejudicial error in failing to make a predetermination as to the voluntary nature of the confession. (See *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205].) In *Jackson* v. *Denno, supra,* the U.S. Supreme Court held that the jury may pass on the issue of the voluntariness of the defendant's confession only after the trial judge has first determined in a separate proceeding conducted outside the presence of the jury that the confession is voluntary. Thus, a confession is inadmissible if it is admitted into evidence in violation of the rule requiring a preliminary finding of voluntariness by the trial court.

It has long been the rule of this state that it is for the court in the first instance to determine from the attendant circum-

stances whether a confession is free and voluntary and therefore competent for the jury to consider. (*People* v. *Gonzales,* 24 Cal.2d 870 [151 P.2d 251].) However, it was not the law before the high court decision in *Jackson* v. *Denno, supra,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], that the evidence determinative of the nature of the confession and of its admissibility must be heard by the court preliminarily out of the hearing of the jury. (*People* v. *Gonzales, supra,* p. 876.) Prior to *Jackson* v. *Denno, supra,* the trial courts of California were required to permit the defendant to overcome the prosecution's prima facie showing of voluntariness, and a refusal to grant the defendant such right to present evidence upon the issue could constitute prejudicial error. (*People* v. *Gibson,* 28 Cal.App. 334 [152 P. 326].) Thus, it was the function of the court in the first instance to resolve any conflict in the evidence on the subject (*People* v. *Jim Ti,* 32 Cal. 60, 64), and in the event that the court then concluded that the confession was not free and voluntary, the trial judge had the power and duty to withhold the confession from the jury's consideration. (*People* v. *Gonzales, supra,* 24 Cal.2d 870, 876.) Conversely, if there was evidence that the confession was free and voluntary, it was within the court's discretion to permit the confession to be read to the jury and to submit to the jury for its determination the question whether the confession was free and voluntary. (*People* v. *Oliveria,* 127 Cal. 376, 381 [59 P. 772].) Consequently, under pre-*Jackson* v. *Denno* procedures, the trial judge in California was not required to receive evidence out of the presence of the jury for the purpose of determining preliminarily the question of admissibility. (*People* v. *Gonzales, supra,* at p. 877.)

The issue then arises whether the constitutional formula adopted in *Jackson* v. *Denno, supra,* 378 U.S. 368 [84 S.Ct. 1774], is to be granted retroactive application under the circumstances presented in this case. While the doctrine formulated in *Jackson* v. *Denno, supra,* is retroactive, as evidenced by the fact that the landmark decision itself was in the nature of a collateral attack (habeas corpus), and the retroactivity of the doctrine was subsequently confirmed by the Chief Justice of the United States in another much-publicized decision (*Johnson* v. *New Jersey,* 384 U.S. 719, 727-728 [16 L.Ed.2d 882, 888-889, 86 S.Ct. 1772, 1777-1778]), the reasoning contained in *People* v. *Rivers, supra,* 66 Cal.2d 1000, 1005, for not applying *Escobedo-Dorado* retroactively

should be similarly pertinent in not granting retroactivity to *Jackson* v. *Denno, supra,* to a reinstated appeal. Although the Supreme Court in *Rivers* held that the *Escobedo-Dorado-Miranda* rules do not apply to a reinstated appeal, the decision further utilized language indicating that such rules must nevertheless be taken into account on the issue of voluntariness. (*People* v. *Rivers, supra,* 66 Cal.2d 1000, 1005; *Clewis* v. *Texas,* 386 U.S. 707 [18 L.Ed.2d 423, 425, 87 S.Ct. 1338, 1339]; *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 730 [16 L.Ed.2d 882, 890, 86 S.Ct. 1772, 1779].) Nevertheless, it also appears clear that where the record is devoid of evidence in support of the defendant's contention that his confession was involuntary, and the record further demonstrates that the defendant's guilt of the crime was established beyond a reasonable doubt irrespective of the confession, no conceivable justification whatsoever exists for remanding the cause solely for the purpose of now ordering, some seven years after the commission of the crimes with which the defendant was charged, and nearly six years following his imprisonment, that a hearing be conducted for the limited purpose of determining the voluntary nature of the confession (see *Jackson* v. *Denno, supra,* 378 U.S. 368, 394, 395, 396 [12 L.Ed.2d 908, 925, 926, 927, 1 A.L.R.3d 1205, 1223, 1224, 84 S.Ct. 1774, 1790-1791]), or for reversing the judgment of conviction and ordering a new trial on the issue of guilt or innocence.

 In a reinstated appeal, failure to follow the procedures outlined in *Jackson* v. *Denno, supra,* 378 U.S. 368 [84 S.Ct. 1774], where the record is completely devoid of conflicting evidence upon the voluntary issue,[1] where the evidence

---

[1]See *People* v. *Garner,* 234 Cal.App.2d 212 [44 Cal.Rptr. 217]; cert. granted *Garner* v. *California,* 386 U.S. 272 [18 L.Ed.2d 41, 87 S.Ct. 1033], wherein the U.S. Supreme Court vacated the California judgment and remanded the cause for further consideration in light of *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. We fully recognize the effect of the U.S. Supreme Court action in vacating the judgment, but note that the ground for vacating the California Court of Appeal judgment was to permit the state court to review the record in conformity with the doctrine adopted in the *Chapman* case, *supra.* We nevertheless are impressed with the reasoning of the Court of Appeal insofar as it related to the issue as to the retroactivity of *Jackson* v. *Denno, supra,* 378 U.S. 368 [84 S.Ct. 1774], to a reinstated appeal. We further note with great interest that the California Supreme Court, in July 1967, in *People* v. *Rivers, supra,* cited the *Garner* case as authority notwithstanding the United States Supreme Court's action in vacating the *Garner* judgment on March 13, 1967 (see *People* v. *Rivers, supra,* 66 Cal.2d 1000, 1004), which indicates that the California Supreme Court regarded the reasoning of the *Garner* case as authoritative and recognizes that the

reflects that the confession was voluntary beyond a reasonable doubt, and where the record further indicates that the defendant's guilt of the principal charge was established beyond a reasonable doubt, independently of the confession (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], it is unnecessary to either reverse the judgment of conviction or to remand the cause for the limited purpose of determining the voluntary nature of the extrajudicial statement.

The evidence offered by the defendant herein tending to support his position that his confession was involuntary was his testimony to the effect that the only reason he confessed to the commission of the crime involved was to save his accomplice from prosecution. This reason for confessing appears to be strictly fictitious. We are cognizant of situations where an innocent person might confess by reason of a threat to prosecute a loved one such as a member of one's own family. From the facts presented herein, however, there is no evidence establishing a close connection between Flippen and the defendant except for the fact they were roommates, and consequently, the defendant's suggestion that he confessed solely to protect his roommate is unbelievable. We are further convinced that the trial judge, in denying the motion to strike the confession, equated his action with a finding of voluntariness under the law as it then existed. (See *People* v. *Gonzales*, *supra*, 24 Cal.2d 870, 875-877.) Thus, the trial court did make a clear determination that the defendant's confession was voluntary when the defendant's motion to strike the evidence pertaining to the confession was denied. Supplementally, the trial court properly admitted the defense testimony bearing upon such issue for the jury's determination.

Furthermore, a review of the entire case leaves no doubt as to the defendant's guilt inasmuch as the evidence thereof is conclusive. Irrespective of the confession herein, there was conclusive evidence establishing the defendant's guilt beyond a reasonable doubt, which evidence may be summarized in the following manner: The defendant physically resembled the robber; the used band-aids found in his room were not used for medical purposes, and the stick-up artists had utilized band-aids for the purpose of camouflaging their appearance; the robbers used cosmetics for disguise purposes and pancake

United States Supreme Court's action in vacating the judgment was only to permit a further review for a specific purpose, to wit, to conduct an analysis of the record in the light of *Chapman, supra.*

makeup was found on the defendant's white shirt, and such a shirt was worn by one of the culprits; both robbers wore baseball caps and the baseball cap found in the stolen car belonged to the deceased son of defendant's landlady, which indicates that the defendant or his accomplice appropriated the cap; the defendant expended large sums of money after the market robbery involved, although he had just been released from prison six weeks prior to the robbery and had been continuously unemployed since being paroled and never had any legitimate source of funds or income since his release; that at the time of his arrest, the defendant spontaneously made inquiry of the officers as to whether they intended to discuss the market robbery with him, which statement was made before he had been subjected to any process of interrogation; and which declaration was not the result of any interrogation procedure but was voluntarily made by the defendant. These factors comprise strong evidence which tend to establish the defendant's guilt beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18, 26 [17 L.Ed.2d 705, 711, 87 S.Ct. 824, 829.)

The judgment is affirmed.*

McCabe, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied September 6, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1967.

---

*Reporter's Note: An appeal from an order denying a new trial was dismissed, the order being nonappealable.