[Crim. No. 3933.   First Dist., Div. One.   Jan. 31, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. HAROLD LLOYD GARNER, Defendant and Appellant.

Dennis M. Bourquin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—This matter is before this court following decision of the Supreme Court of the United States (386 U.S. 272 [18 L.Ed.2d 41, 87 S.Ct. 1033]) which granted the defendant's petition for certiorari and ordered that the judgment predicated on the decision of this court (234 Cal.App.2d 212) be vacated. The case was remanded for further consideration "not inconsistent with the opinion" of that court, which in turn recites, "The judgment is vacated and the case remanded for further consideration in light of *Chapman* v. *California,* 386 U.S. [18] [17 L.Ed.2d 705, 87 S.Ct. 824]."

The history of this case presents a chronological summary of recent developments in constitutional law.

In the early part of July 1960 two automobile agencies in Contra Costa County were burglarized. The relevant facts are set forth in the opinion of this court reported at 234 Cal.App. 2d 212.

The defendant was arrested on July 11, 1960, and on July 29, 1960 an information was filed charging him with two burglaries, with explosives (Pen. Code, § 464), and four prior felonies, which were subsequently admitted by the defendant. He was found guilty of the burglaries after a trial by jury, and on November 9, 1960 judgment was pronounced sentencing him to prison for consecutive sentences for the burglaries, with four prior convictions. The defendant filed a letter treated as a notice of appeal on November 16, 1960.

The record on appeal was filed with this court on February 24, 1961, and the defendant was advised that his opening brief was due in 30 days. On July 7, 1961 he was advised that unless a brief was filed within 30 days, his appeal would be dismissed. (Cal. Rules of Court, rule 17a.) On September 5, 1961, an order was made dismissing his appeal for failure to file a brief. A remittitur issued on the judgment of dismissal on November 6, 1961.

On December 10, 1963, defendant filed a petition for habeas corpus with the State Supreme Court alleging as a ground of illegal confinement, among others, a denial of representation by counsel on appeal, as required by *Douglas*. (*Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].) On January 22, 1964, the petition was transferred to this court. The following day, without other action on the petition for habeas corpus, the 1961 dismissal was vacated by an order which stated, "It appearing that the appeal in the above entitled case was inadvertently dismissed under Rule 17a. . . ." The remittitur was recalled, and counsel was appointed to represent defendant on the reinstated appeal. A subsequent motion by the People to vacate the order which set aside the dismissal was denied. (See 234 Cal.App.2d at p. 215.)

On June 22, 1964, the United States Supreme Court decided *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and on August 31, 1964, the California Supreme Court filed its original opinion in *People* v. *Dorado* (Cal.) 40 Cal. Rptr. 264, 394 P.2d 952. Argument on and submission of the case was deferred pending final decision in *People* v. *Dorado*

(62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]) because of the possible application of the principles of that case to defendant's appeal.[1] The matter was ultimately heard on March 23, 1965.

On April 28, 1965, while this case was under submission, the United States Supreme Court rendered its decision in *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. The record then before the court on this case, which included the instructions given by the court but not the arguments of counsel, was reviewed to ascertain whether the *Griffin* rule applied, and it was determined that no instruction had been given in violation of the federal Supreme Court's mandate. The decision of this court affirming the judgment was filed May 5, 1965. Petitioner alluded to violation of the *Griffin* rule in a petition for rehearing (denied by this court June 21, 1965), and in application for hearing in the State Supreme Court (denied June 30, 1965). The record was not augmented in connection with either of these applications. A remittitur issued July 6, 1965.

Thereafter, in November 1965, the time for filing a petition for certiorari having been extended, the defendant filed his petition for writ of certiorari with the United States Supreme Court. Petitioner contended that his privilege against self-incrimination was unlawfully abridged in violation of the Fifth Amendment by the district attorney's comment upon his refusal to testify. In his index of reasons for granting the writ he alleged that "the court instructed the jury illegally," but this unsubstantiated claim was not repeated in the body of the petition. Further contentions that he was convicted by reason of a coerced confession, and that he was denied the effective and good faith assistance of counsel are not within the scope of *Chapman*, or of this review.

Following the decision in *Chapman* (386 U.S. 18), February 20, 1967, the United States Supreme Court on March 13, 1967 filed its decision in this case (386 U.S. 272). Upon the receipt and filing of the mandate of that court, the remittitur of this court was recalled for the second time. Thereafter, proceedings for further hearing in the case were delayed by the necessity of securing an augmented record containing the

---

[1]This question was thoroughly examined and was determined adversely to defendant. (*People* v. *Garner* (1965) 234 Cal.App.2d 212, 218-225 [44 Cal.Rptr. 217].) This review has proved to be ''love's labor lost.'' (Cf. *People* v. *Garner, supra,* 234 Cal.App.2d 212, 215, fn. 1, with *People* v. *Rivers* (1967) 66 Cal.2d 1000, 1004-1005 [59 Cal.Rptr. 851, 429 P.2d 171], and text *infra.*)

arguments of counsel, and by the substitution of new counsel for the defendant. Further briefs were ultimately filed and the matter was fully argued and submitted.

*Scope of Review*

The People first contend that review of the possible error by the prosecutor's comment on the defendant's failure to testify is barred under state law by the principle recently enunciated in *People* v. *Rivers* (1967) 66 Cal.2d 1000 [59 Cal.Rptr. 851, 429 P.2d 171]. In that case it was determined that the *Escobedo-Dorado* rules do not apply to appeals that were reinstated because of the United States Supreme Court's disapproval of California procedure for determining when counsel should be appointed to represent indigent defendants on appeal. (*Douglas* v. *California, supra,* 372 U.S. 353.)[2] In *Rivers* the court distinguished between those cases that were not "final" as of the date of *Escobedo,* and cases which were apparently final but were reinstated. In discussing the latter category, the court stated: "This new category of cases was spawned by the disapproval of California's procedure for determining when counsel should be appointed to represent indigent defendants on appeal. (*Douglas* v. *California, supra,* 372 U.S. 353; see also *Swenson* v. *Bosler* (1967) 386 U.S. 258 [18 L.Ed.2d 33, 87 S.Ct. 996]; *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396].) Under *Douglas,* defendants whose convictions were final years ago, having exhausted all routes of appeal, are today afforded the assistance of counsel on appeal in all cases in which it was previously denied. We directed the recall of the remittitur and the reinstatement of the appeal in this case for the sole purpose of affording equality in representation between defendants denied counsel on appeal and defendants who had counsel. (372 U.S. at pp. 355-358 [9 L.Ed.2d at pp. 813-815].) To apply *Escobedo* at a reinstated appeal and to review police conduct that occurred years before that decision would not

---

[2]In *Douglas* v. *California, supra,* 372 U.S. 353, the record was in fact reviewed by the appellate court in connection with the denial of the defendant's request for the appointment of counsel on appeal. Here there was no direct application for the appointment of counsel. (In a letter to the court, dated March 20, 1961, the defendant requested a delay because he had not yet received his copy of the transcript and "also my lawyer has left my case." No similar request was received after the rule 17a letter.) The record was never reviewed. The distinction appears to be immaterial because a new hearing is required in either case. (*People* v. *West* (1967) 253 Cal.App.2d 348, 356-357 [61 Cal.Rptr. 216]; see also *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396].)

promote equality. To the contrary, 'the indigent defendant deprived of counsel anomalously would find himself possessed of more shafts in his quiver than would have been the case had he been able to afford to properly arm himself in the first instance.' (*People* v. *Garner* (1965) 234 Cal.App.2d 212, 215, fn. 1 [44 Cal.Rptr. 217].)

"Insofar as the additional shaft provided by *Escobedo* is primarily prophylactic, it is directed at controlling future police conduct, not conduct that was long ago completed and that was then lawful. Retroactive application of *Escobedo*, regardless of the finality of the judgments of conviction or the voluntariness of the defendants' statements would create the very harms we sought to foreclose in *Lopez*. It 'would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from [such a rule]; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws.' (*In re Lopez, supra,* 62 Cal.2d at p. 381 [42 Cal.Rptr. 188, 398 P.2d 380].)

"The serious disruption of the administration of the criminal law that would be caused by retrials and by the denial of the use of statements received in full compliance with the law compels adherence to the rationale of *In re Lopez*. We therefore hold that the *Escobedo-Dorado* rules do not apply to reinstated appeals such as this one. Cases in which it has been held or assumed that those rules apply to reinstated appeals are disapproved insofar as they are inconsistent with the views expressed herein (e.g., *People* v. *Jaquish* (1966) 244 Cal.App.2d 444, 448 [53 Cal.Rptr. 123]; *People* v. *Boyden* (1965) 237 Cal.App.2d 695, 697 [47 Cal.Rptr. 136]; *People* v. *Garner* (1965) 234 Cal.App.2d 212, 215, fn. 1 [44 Cal.Rptr. 217]; *People* v. *Benavidez* (1965) 233 Cal.App.2d 303 [43 Cal.Rptr. 577]." (66 Cal.2d at pp. 1004-1005.)

In this case the original judgment, following the dismissal of defendant's appeal, became final on February 4, 1962, ninety days after the original remittitur was issued. The conduct of the prosecutor, which it is now sought to review, was not improper at the time, and would have been sustained in any review which became final prior to the decision in *Griffin* v. *California* on April 28, 1965. (*Tehan v. Shott* (1966) 382

U.S. 406, 419 [15 L.Ed.2d 453, 461, 86 S.Ct. 459]; *In re Gaines* (1965) 63 Cal.2d 234, 237-240 [45 Cal.Rptr. 865, 404 P.2d 473]; and see *People* v. *Perez* (1967) 65 Cal.2d 615, 620, fn. 2 [55 Cal.Rptr. 909, 422 P.2d 597]; and *People* v. *Ing* (1967) 65 Cal.2d 603, 609, fn. 2 [55 Cal.Rptr. 902, 422 P.2d 590].) The reasons enunciated in *Tehan* support application of the *Rivers* principle to the *Griffin* rule. The opinion of the United States Supreme Court states:

"[W]e deal here with a doctrine which rests on considerations of quite a different order from those underlying other recent constitutional decisions which have been applied retroactively. The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent. [Citations.] The same can surely be said of the wrongful use of a coerced confession. [Citations.] By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect." (382 U.S. at p. 416 [15 L.Ed.2d at p. 459].) The court also concurred in the conclusion of the California amicus brief, that: " 'Those reaping the greatest benefit from a rule compelling retroactive application of *Griffin* would be [those] under lengthy sentences imposed many years before *Griffin*. Their cases would offer the least likelihood of a successful retrial since in many, if not most, instances, witnesses and evidence are no longer available.' . . . To require . . . States now to void the conviction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration." (*Id.*, at pp. 418-419 [15 L.Ed.2d at pp. 461-462]. See also *People* v. *Birdwell* (1967) 253 Cal.App.2d 621, 628-629 [61 Cal.Rptr. 536]; and *People* v. *West* (1967) 253 Cal.App.2d 348, 356-359 [61 Cal.Rptr. 216].)

The logic of the approach suggested by the People is persuasive. Nevertheless, as defendant points out, the United States Supreme Court on March 13, 1967 ordered this court to

review the instant case to determine whether the comments of the prosecutor were or were not, in the words of *Chapman*, "harmless beyond a reasonable doubt." Defendant contends that the subsequent pronouncement in *Rivers* of a rule of restricted review, cannot be applied retroactively to defeat the mandate of the higher court.

The extension of *Rivers* to principles other than *Escobedo-Dorado* can only be finally determined by the Supreme Court of this state, and its application, as so extended, to this particular case can only be finally determined by the court which has ordered this review. ■ It is sufficient to determine here, as a question of first impression, that a defendant with a reinstated appeal from a judgment which had become final before the decision in *Griffin* v. *California*, should be precluded from raising the illegality of the California comment rule which was sanctioned at the time of his trial and when his original appeal was determined. Nevertheless, because of the peculiar posture of this particular case, compliance with the mandate of the Supreme Court of the United States should be pursued to assist the ultimate disposition of the case.

*Effect of Error*

■ "[T]he Fifth Amendment, . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin* v. *California, supra,* 380 U.S. 609, 615 [14 L.Ed.2d 106, 110].)

In this case, as noted above, there was no instruction by the court concerning the inferences the jury could draw from the failure of the defendant to testify. (See CALJIC (rev. ed. 1958) Instruction No. 51, pp. 75-76 [now re-revised, 1967 pocket parts, pp. 54-55, in the light of *Griffin*] ; Cal. Const., art. I, § 13; and *cf. People* v. *Modesto* (1967) 66 Cal.2d 695, 714 [59 Cal.Rptr. 124, 427 P.2d 788] ; and *People* v. *Stout* (1967) 66 Cal.2d 184, 198 [57 Cal.Rptr. 152, 424 P.2d 704] ; with *Chapman* v. *California, supra,* 386 U.S. 18, 19, fn. 2 [17 L.Ed.2d 705, 707] ; *Griffin* v. *California, supra,* 380 U.S. 609, 610 [14 L.Ed.2d 106, 107] ; *People* v. *Ross* (1967) 67 Cal.2d 64, 74, fn. 2 [60 Cal.Rptr. 254, 429 P.2d 606] ; *People* v. *Bostick* (1965) 62 Cal.2d 820, 823 [44 Cal.Rptr. 649, 402 P.2d 529] ; *People* v. *Otwell\** (Cal.App.) 61 Cal.Rptr. 427, and *Peo-*

---

\*A hearing was granted by the Supreme Court on October 11, 1967, and the cause was retransferred to the Court of Appeal, Third District,

*ple* v. *Garrison* (1967) 252 Cal.App.2d 511, 514-515 [60 Cal. Rptr. 596].) The court did give instructions which indicated that no inferences were to be drawn against the defendant.[3]

■■■■ The augmented record reflects that twice in his opening argument, and 11 times in his closing argument, which together are over some 35 pages of the record, the prosecutor referred to the defendant's failure to testify. On four occasions he specifically requested the jury to draw an inference of guilt.[4] Other references did not call for inferences against the defendant on unexplained facts, but merely pointed out that certain facts established by other testimony and exhibits,

---

with instructions to modify the opinion. On October 31, 1967, the Court of Appeal filed an order that the opinion and the order modifying said opinion do not require publication under rule 976, Cal. Rules of Court, and they are not to be published.

[3]The court instructed that "The law raises no presumption whatever against the defendant, but on the contrary every presumption of the law is in favor of his innocence; and in order to convict him of the crime or crimes alleged in the Information, or of any lesser crime which may be included in these charges, every material fact necessary to constitute such crime must be proved beyond a reasonable doubt; and if you entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the defendant the benefit of such doubt, and acquit him."

In addition the court instructed: "Neither the Prosecution nor the defense is required to call as witnesses all persons who are shown to have been present at any of the events involved in the evidence, or who may appear to have some knowledge of the matters in question in this trial; . . ."

[4]At the end of his opening argument the prosecutor declaimed: "Finally, Ladies and Gentlemen, I want to do something and that's this: The Constitution and laws of the State of California permit me as the District Attorney—as the Deputy District Attorney, as the attorney for the People, to comment on this defendant's failure to take the stand at his own trial. I ask you, Ladies and Gentlemen, is this—is this evidence or is this an indication that this man has an honest opinion of his own innocence? Why doesn't he want to take the stand and deny the charge, if in fact he does deny it?

"Now, it's true he doesn't have to. He's got the right not to. Obviously he's got the right not to, because he's exercised that right. But, Ladies and Gentlemen, if you were on trial, on serious charges, and if you felt that you were innocent, would you—would you ever even remotely consider not taking the stand and saying, if nothing else, 'I'm innocent'? This man did not have the courage of his own convictions to stand up and tell you that he's innocent. And the reason for that, Ladies and Gentlemen, is because he knows he's guilty; he knows I know he's guilty; he knows you know he's guilty, and he doesn't want to take the stand because he realizes that his guilt would have to come forth from his own lips if he did."

In closing argument he stated: "Again let's consider this matter of the defendant's failure to testify. This is something I think that you simply can't get away from, that this is virtually, in this instance, a complete admission of guilt. Nobody, either on behalf of the defendant or the defendant himself, has gotten up and said the defendant is inno-

including the defendant's admissible confessions, were uncontradicted.[5]

■ There can be no question that the proscription declared in *Griffin* was violated. In order to carry out the mandate imposed on this court, the evidence against the defendant and his theories of defense, must be examined to determine "whether the prosecution has proved 'beyond a

cent. Nobody. It's all been, 'Well, there's a little bit of doubt here, a little bit of doubt there. Why don't you find him guilty of a lesser and included offense?'

"This is an insincere defense, Ladies and Gentlemen. I'm not casting any aspersions on any persons involved, but I'm saying basically the feeling behind this is not one of sincerity. There is no sincere desire to controvert this charge.

"You may ask yourselves why doesn't the defendant want to take the stand. So I suppose we could get romantic and say he was trying to protect somebody, although I doubt that very much. Who would he protect? These things in real life just don't happen.

"The fact of the matter is that when a man will not take the stand, there is some reason for it. And the reason is in this case, I think, that he realizes that he would be convicted out of his own mouth if he did. That's a fact that, as I said before, the Constitution and the laws of the State of California permit me to comment on his failure to take the stand, and that's exactly what I am doing. I'm commenting on it. I believe it is significant.''

In concluding he remarked: "I think that pretty well covers what [the attorney] says on his closing argument. I really can't say anything but this, and this is, that this case, with no confession at all, I think there would have been guilt proven beyond any reasonable doubt on the basis of the evidence before you. With the confessions, Ladies and Gentlemen, the evidence of guilt is not only beyond a reasonable doubt, it is overwhelming.

"With that, and the defendant's own refusal to have the common—call it anything you wish—common sense, common courtesy, anything, to get up there and just simply say, 'I didn't do it'—with all of that it becomes as close to a certainty as you can get, that Harold Lloyd Garner is guilty of burglary with an acetylene torch in violation of 464 of the Penal Code, not only of Conway Motors in Concord, but of the establishment of McFetridge Buick in Walnut Creek.''

[5]These references are as follows: "Then there is no evidence whatsoever in contradiction of the fact that the defendant himself, Mr. Garner, sitting right there—he's had a chance to deny this himself if he wanted to—took the tools from the McFetridge Buick and took them down to his brother-in-law, Robert Fernandez, in San Leandro, and that he stored them there, and that when he was taken into custody, that when Mr. Fernandez found out about what the story was and found out that this wasn't either household goods, that he invited the police down there and the police took them in as evidence.''

"I have been sitting here listening the whole time. Now, the last thing that I did before closing in my first argument was to comment to you and to draw to your attention very strongly the fact that in this case we have not had—we have not been honored by any sworn testimony from the defendant. And so I was listening to what his counsel had to say with the idea in mind that perhaps out of what had been developed that he would give us some theory of innocence. He has given us a theory that, if anything, you should find the defendant guilty of a lesser and included

reasonable doubt that the error complained of did not contribute to the verdict obtained.' (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710])'' (*People* v. *Modesto, supra,* 66 Cal.2d 695, 712; and see general discussion, *id.,* pp. 711-714; *People* v. *Ross, supra,* 67 Cal.2d 64 at pp. 73-75; and *id.,* pp. 79-86, Traynor, C. J., and Peters J., dissenting.)

▌The record discloses that defendant was connected with the first burglary by evidence which placed him in possession of tools stolen from the burglarized premises. His complicity in the second burglary was evidenced by the presence of his car near the scene on the night the burglary occurred, and the presence of insulation material from the safe on the trousers he wore on the night of that burglary. This evidence is buttressed by the fact that the same *modus operandi* was used in both crimes. There is a suggestion that defendant had previously worked at both establishments. Matches at one scene came from a bar he admittedly patronized. His stated alibi for the night of the second burglary did not check out. This circumstantial evidence is corroborated and linked together by his several confessions, which have not only withstood attack on the unsubstantiated grounds that

offense, something less than 464 of the Penal Code. And actually this is possible under the law, as the Judge will instruct you.''

''Now, keep that in mind when you are in that jury room. Not only has the defendant refused to get up and say, 'I'm innocent', but he also wouldn't get up and say, 'I was promised leniency.' He could have got up and said that, and let it go at that. Or, 'They promised me a deal.' Did you hear him say that? Did you hear anyone say that? He had the opportunity. He's been in court. He's seen everyone of these witnesses. If there was a single one that he wanted to contradict, he could have gotten up there and contradicted them. Did you hear him do it? I didn't.''

''Again, Ladies and Gentlemen, have you heard the defendant get on the stand and say—and repudiate that confession? He hasn't done that. That confession stands before you, unrepudiated, undenied, uncontroverted.''

''And if he wants to say anthing that he didn't get a chance to say in court—I mean to say in the statement, he had the opportunity to take the stand in court here and tell you Ladies and Gentlemen exactly what he had to say. But he didn't do that.''

''Well, both Robert Fernandez and Loraine C. Fernandez both testified from that stand. You didn't hear anything about her having a record or anything like that. Their testimony, too, stands uncontradicted. Nobody contradicted that. Did you hear the defendant get up and say, 'They're lying'? No, you didn't.''

''You heard Lieutenant Thompson. The defendant hasn't denied this.''

''The point of the matter is that he made a statement which was not substantiated, and this is a fact that you can consider. It's not denied. He hasn't gotten up and said it was otherwise.''

''We haven't heard the defendant get up there and say he never told Lieutenant DuPouy this, have we? No, you haven't.''

they were coerced, but also on the grounds that they violated *Escobedo-Dorado* principles. They were uncontradicted not only by the defendant, but also by any other evidence. In other words, the jurors were not requested to fill gaps in the circumstantial proof by inferences from unexplained circumstantial evidence, but were merely asked to accept what was presented and was uncontradicted.

The theories presented by the defense to the jury were that the confessions were involuntary and should be disregarded because the defendant was not promptly arraigned and advised of his legal rights, and because the circumstances gave rise to the inference that they were the product of promises of leniency; that the brother-in-law's testimony regarding defendant's possession of the stolen tools was fabricated by the brother-in-law to protect himself; that there was uncertainty as to the night upon which the first burglary occurred; that there was a mix-up in identifying the material taken from defendant's trousers; that the debris could have come from other sources; that the woman who observed his car heard no noise from the burglarized premises; that someone else might have used defendant's car; that anyone could get matches from the bar mentioned; and that the evidence showed the existence of another statement which was not produced. Defendant's attorney concluded with a plea that the defendant be found guilty of a lesser and included offense. (Instructions and verdicts were given for second degree burglary.)

The theory of the defense was not designed to produce inferences favorable to the defendant in relation to facts which were left unexplained by the proof, a process which, if undermined by the comment, would be seriously prejudiced. For the most part the defense was relying upon speculation and conjecture to create doubts in relation to the uncontradicted evidence. Since there were no lacunae in the prosecution's case, nor any contradictory evidence, there is "no *reasonable* possibility that the error might have materially influenced any juror in arriving at the verdict in this case." (*People* v. *Modesto, supra,* 66 Cal.2d 695, 712.)[6]

On this record it is "most unlikely that any jury would have reached a different conclusion even if the prohibited comment had not been articulated." (*Id.,* at p. 712.) Moreover, the comment itself did not serve to "fill an evidentiary

[6]There is nothing in the record of the deliberations of the jury to contradict this conclusion. They reviewed the evidence received during

gap in the prosecution's case," or "touch a live nerve in the defense, [as distinguished from] . . . one which has been rendered inert by such intrinsic improbability as would prevent it from generating any real doubt in the mind of a reasoning juror." (*Id.*, at p. 714.) This court is convinced beyond a reasonable doubt that the comments complained of were harmless and did not contribute to the verdicts obtained. (*People* v. *Ross, supra,* 67 Cal.2d 64, 73-75; *People* v. *Modesto, supra,* 66 Cal.2d 695, 709-714; *People* v. *Daugherty* (1967) 256 Cal. App.2d 82, 83 [64 Cal.Rptr. 3]; *People* v. *Northern* (1967) 256 Cal.App.2d 28, 30-31 [64 Cal.Rptr. 15]; *People* v. *Garrison, supra,* 252 Cal.App.2d 511, 514-519; *People* v. *Hudgins* (1967) 252 Cal.App.2d 174 [60 Cal.Rptr. 176]; *People* v. *Fontaine* (1967) 252 Cal.App.2d 73, 75-76 [60 Cal.Rptr. 325]; *People* v. *Propp* (1967) 251 Cal.App.2d 611, 612-613 [59 Cal. Rptr. 700]; *People* v. *Boyden* (1967) 251 Cal.App.2d 798, 804 [60 Cal.Rptr. 271]; and *cf. People* v. *Stout, supra,* 66 Cal.2d 184, 198-200; *People* v. *Gills* (1967) 255 Cal.App.2d 812, 813-816 [63 Cal.Rptr. 560]; and *People* v. *Otwell, supra,* *(Cal. App.) 61 Cal.Rptr. 427.)

The opinion heretofore prepared and filed and reported in 234 Cal.App.2d at page 212 et seq. is hereby approved, reinstated and adopted and incorporated by reference in this opinion.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 28, 1968. Mosk, J., and Sullivan, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.

---

the four days of trial in a period commencing with their return from lunch, at an undisclosed hour, until 4:50 p.m. when they returned their verdicts. During that period they requested and were furnished the pictures used in evidence, including a picture of defendant's truck; and upon their inquiry, they were advised that neither the confession nor admission was signed by the accused.

*Hearing granted, see footnote, pp. 427, 428.