[Crim. No. 8555. Second Dist., Div. Four. May 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES CAIN, Defendant and Appellant.

Gilda R. Cohen for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was indicted in Count I with violation of section 187, Penal Code, murder, and in Count II with violation of section 211, Penal Code, robbery. Defendant pleaded not guilty. Defendant personally and all counsel waived trial by jury and the matter was tried by the court. The court found defendant guilty on Count I, of murder in the first degree and fixed the penalty at life imprisonment. Probation and defendant's motion for new trial were denied and defendant was sentenced to state prison for the term of his natural life. Count II was dismissed.

On November 26, 1960, Nathaniel Gaines and Clifford Rollins entered a market located at 1895 E. 97th Street, Los

Angeles. Rollins wore a silk stocking pulled over his head and Gaines carried a .32 caliber automatic in his hand. Gaines forced the owner, Otis Broxton, his wife and a clerk, Shirlene Withers, into the rear of the store. There he fired a shot into the head of Mr. Broxton, killing him. He then removed a wallet and some money from Mr. Broxton's pockets. Meanwhile, Rollins was in the front of the store and after removing money from the cash register he left and entered a car owned and driven by James V. Barnes which was parked across the street from the market. A few moments later, Gaines followed.

Rollins testified that he, Barnes, Gaines and defendant were in Barnes' car when they went to the market; Barnes and defendant remained in the car while the robbery was being committed; he and Gaines went into the market to commit the robbery; after the robbery was committed and the shooting occurred they came back to the car; Barnes and defendant were still in the car; the four of them drove to Gaines' house and divided the proceeds of the robbery between them.

James Barnes testified that, on November 26, 1960, Gaines, Rollins and defendant drove to the market where the robbery and shooting occurred; Gaines, Rollins and defendant were in the car; Gaines produced a gun during the trip, showed it to him and stated it was loaded; Gaines and Rollins got out of the car and went into the market; he and defendant remained in the car; when Gaines returned to the car he said ''Let's get out of here—there's been a robbery''; they drove to Gaines' house; the four of them, including defendant, went into the house; the money was placed upon a table and was divided among them.

Tabitha Gaines, the wife of Nathaniel Gaines, testified: that on November 26, 1960, she arrived home at about 6 or 6:30 p.m. and met Gaines, Rollins and defendant as they were leaving the house; Gaines and defendant returned later and when she asked them what had happened her husband said they wanted him to rob a little store near their house and that he ''pulled the trigger on the gun and shot the gun and scared them away.'' She further testified that defendant said ''We were going to rob that little store around there, and Nat [Gaines] had to act the fool and shoot the gun.'' Defendant and Rollins then left. Later, defendant and another person came back to the house and knocked on the door. She heard defendant's voice; she went to the door as her husband was going out and saw a car parked in front of the

driveway. Defendant and three men got into the car and drove away. After approximately 15 minutes Gaines, Rollins, Barnes and defendant entered the house. Defendant reached in his pocket, got some money, placed it on the table and said "I am going to count this money and I'm going to divide this money up." He counted the money and divided it. Defendant kept part of the money. Barnes gave a gun to Gaines and "All of them were discussing about taking the gun loose piece by piece and taking it way out to a place and dumping it." Then, Rollins, Barnes and defendant again left. Later in the evening Rollins and defendant came back. Later Gaines asked defendant and Rollins where they were going and defendant said "We are going to get another place." She stated that she said, referring to her husband, "He isn't going, or something like that" and they again left.

The next day Gaines, Rollins, Barnes and defendant were together in the Gaines home talking about what had happened. Her husband appeared to be worried. Defendant said "Oh, man, are you worried about that? I don't feel nothing." There was other conversation among the four of them. They were saying something about the man who was killed.

Mrs. Gaines testified she met defendant on the street after her husband, Rollins and Barnes were arrested and when she asked him how he got out defendant said, "Them suckers am going to have to be smart to catch me."

Two witnesses testified on behalf of defendant stating that they observed a person coming out of the market with a pistol in his hand; that they could not identify the man but saw him run across the street and get into a car, and that they could only see three heads in the car as it pulled away.

Two witnesses testified in support of defendant's alibi that at the time of the crime defendant was attending a party about 2½ blocks away from the market where the crime took place.

Defendant contends the evidence was insufficient to support the judgment in that the People failed to prove any connection between him and the crime with which he was convicted, to wit, first degree murder. This contention is devoid of merit.

Penal Code, section 189, reads in part: "All murder which is . . . committed in the perpetration or attempt to perpetrate . . . robbery . . . is murder in of the first degree. . . ." Penal Code, section 31, provides in part that: "All persons concerned in the commission of a crime . . . whether they

directly commit the act constituting the offense, or aid and abet in its commission or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed.''

■ ■'Homicide committed in the perpetration of robbery is murder in the first degree regardless of whether the killing be wilful, deliberate and premeditated or even accidental. [Citations.] ■ A principal in a robbery resulting in a homicide may be found guilty of murder in the first degree notwithstanding that his codefendant fired the fatal shot [citation], and principals include those persons who advise or encourage the commission of a crime or who aid and abet in its commission. [Citations.]'' (*People* v. *Machado*, 150 Cal. App.2d 190, 193-194 [309 P.2d 903].)

■ The evidence reflects that defendant was present in the home of Nathaniel Gaines along with Rollins and Barnes prior to the robbery and murder.

The evidence further reflects that the defendant was present in the car when the gun, subsequently used in the robbery and murder, was displayed in the car as they were driving to the market where the crime was committed; defendant remained in the car as the robbery and murder were committed. Gaines, Rollins, Barnes and defendant drove back to Gaines' house and the proceeds of the robbery were placed on the kitchen table and divided among them, including defendant. At a later meeting of the four men involved in this crime, they had a conversation concerning the robbery and murder and defendant chastized one of the men, the man who actually did the shooting, because of the fact he appeared worried. Defendant indicated to the man he felt nothing.

■ ''The aider and abetter is not only guilty of the crime the contemplated commission of which was known to him, but also of the natural and reasonable or probable consequences of the acts which he knowingly aided or encouraged. [Citations.]

■ 'Whether the act committed was the natural and probable consequence and the extent of the defendant's knowledge are questions of fact for the jury.' [Citations.]'' (*People* v. *Goldstein*, 146 Cal.App.2d 268, 273 [303 P.2d 892]; see also *People* v. *Beltran*, 94 Cal.App.2d 197, 205-206 [210 P.2d 238]; and *People* v. *Etie*, 119 Cal.App.2d 23, 28 [258 P.2d 1069].)

■ In the case before us, a murder was committed in the course of an armed robbery. Such a murder is one in the first degree. The trial court had ample and sufficient evidence to draw a reasonable inference that defendant was an aider and

abetter and therefore was a principal in the murder committed.

Defendant did not testify in his own behalf, but offered several witnesses to support his theory of an alibi. The trial court obviously did not believe these witnesses. ■ "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citations.]" (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; see also *People* v. *Gardner,* 147 Cal.App.2d 530, 536-537 [305 P.2d 614]; *People* v. *Penrice,* 195 Cal.App. 2d 360, 363 [15 Cal.Rptr. 733].)

No useful purpose would be served in a further elaboration of the evidence produced. ■ We hold there is substantial and sufficient evidence to support the judgment.

The judgment of conviction is affirmed and the purported appeal from the order denying defendant's motion for new trial is dismissed.

Burke, P. J., and Kingsley, J., concurred.