[Crim. No. 14448. Second Dist., Div. Five. Aug. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNIE HUGH EATON et al., Defendants and Appellants.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Peter D. Kossoris and Roland N. Purnell, Deputy District Attorneys, for Plaintiff and Respondent.

STEPHENS, Acting P. J.—Defendants Eaton and Hoston (appellants here), together with codefendant Burnett Williams, Jr., were charged by information with the offense of robbery, a violation of Penal Code section 211. Separate alle-

gations in the information charged all three defendants with being armed with a deadly weapon at the time of commission of the offense and at the time of their arrest. Codefendant Williams was later ordered certified to Ventura County juvenile court. A first amended information was subsequently filed, alleging the prior felony. convictions of defendants Eaton and Hoston. Defendant Eaton pleaded not guilty and denied the additional allegations in the information, including the priors. Defendant Hoston pleaded not guilty and denied the additional allegations in the information other than the prior felony conviction, which he admitted. After a trial by jury, the jury found each defendant guilty of robbery in the first degree and found that each was armed at the time of commission of the offense, as well as at the time of his arrest. Defendant Eaton requested sentencing forthwith and was sentenced to state prison for the term prescribed by law. No findings were made as to the prior felonies alleged to have been committed by defendant Eaton. Defendant Hoston made application for probation. Subsequently, probation was denied and defendant Hoston was sentenced to state prison for the term prescribed by law, the court finding the conviction of the prior felony as alleged to be true. Defendants filed timely notices of appeal from the judgments of conviction.

In the early morning hours of June 5, 1967, Ralph Lozano was on duty as a service station attendant at his place of employment, Oxnard Self-Service, in the City of Oxnard. At about 2:05 a.m., two men walked into the station, and Lozano went out to meet them. As he approached the men (later identified as Eaton and Williams), Eaton held out one of two $20 bills, indicating he wanted change. Lozano, being short of change, told them to try at two different cafes. They walked a short distance away and then returned, at which time Eaton asked to use the restroom. While Lozano stood sweeping, he saw the two men come from the restroom and walk directly toward him. The lighting was good, and he could see them clearly. As they approached, Eaton drew a gun and demanded Lozano's money. Lozano replied that he had none, whereupon Eaton struck him on the head with the gun, causing Lozano to fall to his knees. Lozano then took the roll of bills he had in his pocket, estimated to be about $65 to $70, and handed it to Eaton. Eaton and Williams then ran toward an alley. Lozano heard car-doors closing, and saw a car immediately drive out of the alley. He identified it as a light or white-colored 1957 Cadillac, and he noted that it had loud mufflers. Lozano saw

the Cadillac travel east on Seventh Street in the direction of Meta Street, which is the next through street crossing Seventh Street.

Alfred Yanez, an acquaintance of Lozano who had just closed a nearby liquor store, was driving south on Oxnard Boulevard at about 2:10 a.m. and had stopped for the traffic light at Seventh Street. He saw Lozano on his knees with two men standing over him, but thought that Lozano was checking the underground gasoline tanks. He drove past, but then made a U-turn at Eighth Street and returned, thinking something was wrong at the station. When he arrived, Lozano told him he had just been robbed and that the robbers had left on Seventh Street, in a white car, going out of town. Yanez drove off in that direction, turning on Meta Street and traveling to Fifth Street, where he contacted Officer Latimer of the Oxnard Police Department.

At about 2:10 a.m., just prior to being approached by Yanez, Officer Latimer was parked in a police car, facing north on Meta Street, at the southeast corner of Fifth and Meta Streets. This is a well-lighted intersection. Just as Latimer was about to proceed, a vehicle with loud mufflers drove up beside his car. The car stopped at the intersection beside the police car, approximately three to four feet from the police car. The car, which Latimer identified as a light or cream-colored 1957 or 1958 Cadillac, remained stationary in that position for about 10 to 15 seconds, while traffic passed. Officer Latimer had a clear view of the driver and the passenger in the front seat, and he later identified them as Hoston and Eaton, respectively. After traffic passed on Fifth Street, the Cadillac turned right and was last seen by Latimer eastbound on Fifth Street. As the Cadillac drove away, Officer Latimer noticed a third person in the car, seated in the rear seat. After the Cadillac passed in front of his car, Latimer turned left on Fifth Street, and was in the intersection when Yanez' car approached at a high rate of speed, with its horn blasting and lights flashing. Yanez advised the officer of the robbery, and Latimer immediately went to the scene, where a report was taken from Lozano, after which the information was given to the Oxnard Police Department radio dispatcher.

At about 2:30 a.m., a radio broadcast was heard by Charles F. Rikalo, a Los Angeles police officer who was on freeway patrol in the Topanga Canyon area of the Ventura Freeway. The radio broadcast described a robbery which had occurred in Oxnard, and listed the suspects as three male Negroes driv-

ing a 1957 or 1958 white Cadillac headed for Los Angeles. About 15 minutes later, Officer Rikalo saw such a car with three male Negroes in it, being driven eastbound on the freeway. He and two highway patrol officers stopped the car, in which defendants and Williams were riding. Sergeant Richard J. Reynolds, a field supervisor for the Los Angeles Police Department, was on duty in the early morning hours of June 5, 1967. He observed the white 1957 or 1958 Cadillac on the Ventura Freeway (having apparently been stopped by other officers) between 2:45 and 2:50 a.m. that morning. Reynolds observed Eaton in the right front passenger seat of the car, while Hoston was identified as the driver. The third person in the vehicle was identified as Burnett Williams. All three occupants were placed under arrest. A pat-down search of Eaton revealed some money in his right sock. The suspects were transported to Oxnard by Oxnard detectives, and booked at the police department.

Later that morning of June 5, 1967, the three suspects were placed in a lineup at the Oxnard police station. This lineup consisted of the three suspects and two other Negroes. All were dressed in jail clothing. They were viewed by Lozano, and he immediately picked out Eaton and Williams as the two who had robbed him. After this identification, Lozano asked to see Eaton and Williams in civilian clothes, and all three suspects were brought out again in their civilian clothes for Lozano to view. Lozano confirmed his initial identification.

The five-man lineup in which all were wearing jail clothing was held a second time for Officer Latimer to view. He identified Eaton and Hoston as the two he had seen in the Cadillac at Fifth and Meta Streets.

█ Defendant Eaton contends that he was denied a fair trial because he and his codefendants were singled out for separate viewing by the victim. However, the viewing of the three suspects alone occurred subsequent to a lineup in which the three suspects and two others, all male Negroes dressed in prison clothing, were shown to the victim. At this initial lineup, the victim, without hesitation, positively identified Eaton and Williams as the men who had robbed him. No challenge is made as to the fairness of this initial lineup, and our examination of the record fails to disclose that it was conducted in other than a fair manner.[1] There is no evidence that

---

[1]The lineup in the present case took place on June 5, 1967 and hence predated *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct.

the victim was primed before viewing the suspects, and the initial lineup appears to have been conducted with scrupulous regard for fairness. (*People* v. *Feggans,* 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432 P.2d 21].)

Defendant Hoston contends that there is nothing inconsistent with innocence in the fact that he was present in the vehicle when it was stopped by the police subsequent to the time the offense took place; that accordingly, since he was not identified by the victim, the evidence is insufficient to sustain his conviction. This argument totally disregards the state of the evidence. Defendant Hoston was positively identified by Officer Latimer as the driver of the Cadillac in which defendant Eaton was a passenger at a distance of only three blocks from the robbery scene; timewise, this must have been a minute or less after the car left the station. Officer Latimer's attention was attracted to the vehicle by its loud mufflers. He stated that the vehicle was a 1957 or 1958 light-colored Cadillac. These descriptive factors matched those which had been given by the victim regarding the vehicle he had seen minutes before. The subsequent chain of events leading to defendant Hoston's arrest in this vehicle approximately 45 minutes later is susceptible of the reasonable inference that defendant Hoston participated in the offense as driver of the get-away car, the doors of which Lozano had heard slam. Defendant Hoston's participation in the offense was a question to be resolved by the trier of fact. (*People* v. *Cain,* 216 Cal.App.2d 748 [31 Cal.Rptr. 190].) The evidence was sufficient to establish that defendant aided and abetted in the commission of the crime and thus was guilty as a principal. (*People* v. *Henderson,* 255 Cal.App.2d 513 [63 Cal.Rptr. 164].)

Defendant Hoston next contends that he was prejudiced by the prosecutor's comment in closing argument that Hoston had failed to deny any of the charges against him.[2] A

1951], which were decided on June 12, 1967. Accordingly, we consider only whether the conducting of the lineup comported with due process of law. (*Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].)

[2] In closing argument, the prosecutor made the following statements: "Now, there has been testimony by the defendant Hoston in this case, he testified about one thing—he didn't deny anything in this case at all, didn't deny one thing. He took the stand, and in so doing, he waived his right against self-incrimination, he waived that right. You heard his testimony, you heard not one denial of any allegation made by any witness."

timely objection was made on behalf of defendant Hoston. He contends that such comment constitutes error of the type condemned in *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. *Griffin* held that to allow the prosecutor to comment upon a defendant's failure to testify and to infer guilt from such failure were violative of a criminal defendant's Fifth Amendment privilege against self-incrimination made applicable to the states in *Malloy* v. *Hogan*, 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]. In the present case, however, defendant Hoston did testify. Nevertheless, his testimony was restricted to the conduct of the pretrial identification process, and the prosecutor, in his cross-examination, did not transcend the scope of defendant's direct examination. The question thus presented is whether a prosecutor can comment on a defendant's failure to testify regarding the facts concerning the offense where such defendant has taken the stand for a limited purpose not encompassing the commission of the offense. Collaterally, we must also consider, though not argued by defendant Eaton, whether such comment infringes upon a codefendant's privilege against self-incrimination when the codefendant has not testified at all, and even though the prosecutor's remarks were not directed to such codefendant.

As to defendant Hoston, it is necessary to consider to what extent he waived his privilege against self-incrimination by testifying. The general rule in this state is that a defendant by testifying in his own behalf waives his privilege against self-incrimination, at least to the extent of the permissible scope of cross-examination. (*People* v. *Atchley*, 53 Cal.2d 160, 173-174 [346 P.2d 764].) ▮ Of course, where a defendant makes a general denial of the crime, the permissible scope of cross-examination is very wide. (*People* v. *Tarantino*, 45 Cal.2d 590, 599 [290 P.2d 505].) However, it would appear that the converse is also true. That is, where a defendant takes the stand and testifies, he thereby waives his Fifth Amendment privilege *only* to the extent of the permissible scope of cross-examination. (See *People* v. *Ing*, 65 Cal.2d 603, 610 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Perez*, 65 Cal.2d 615, 620 [55 Cal.Rptr. 909, 422 P.2d 597].) In the *Ing* and *Perez* cases, however, the court concluded that the *Griffin*-type comment and instruction were not improper since the subject matter of comment would have been proper cross-examination. *A fortiori*, if the subject matter could not have been explored on cross-examination, then comment on such matter would be impermissible. ▮ In the present case, it

is evident that had the prosecutor sought to question defendant Hoston concerning the facts of the offense, such cross-examination would have exceeded the scope of direct examination, and an objection on that basis would have been proper. Consequently, the prosecutor's comments concerning Hoston's failure to deny or explain complicity were improper, and violated the spirit if not the letter of *Griffin.* We are cognizant of the admonition found in *People* v. *Mortenson,* 241 Cal.App.2d 137, 139-140 [50 Cal.Rptr. 269] that "defendants should not be permitted to 'invite error' or to seek undue advantage by taking the stand before the jury, even for the limited purpose of giving testimony that per se might appear to be essentially innocuous, without being deemed to have waived the constitutional privilege." On balance, however, we believe the dangers inherent in commenting upon an accused's failure to testify outweigh any speculative undue advantage which might inure to a defendant by taking the stand for a limited purpose. In *Mortenson,* the court found a violation of *Griffin* in the prosecutor's comments on defendant's failure to testify because defendant's testimony "was limited to the establishment of only a single, purely subsidiary and colorless fact which was equally useful both to the defense and to the prosecution." (241 Cal.App.2d at p. 140.) We do not choose to rest our decision on so narrow a basis. The risk that a comment will increase "*the jury's inclination to treat the defendant's silence as an indication of his guilt*" (*People* v. *Modesto,* 66 Cal.2d 695, 713 [59 Cal.Rptr. 124, 427 P.2d 788]) becomes considerable where the prosecution "solemnizes the silence of the accused into evidence against him." (*Griffin* v. *California, supra,* 380 U.S. 609, 614 [14 L.Ed.2d 106, 109, 85 S.Ct. 1229].) ▮ We have concluded that comment is proper under the Fifth Amendment only when a defendant takes the stand to testify as to issues material to the commission of the offense. (See *Caminetti* v. *United States,* 242 U.S. 470, 492-495 [61 L.Ed. 442, 455-457, 37 S.Ct. 192].)

▮ Collaterally, the prejudice inherent in such erroneous comment is magnified where, as in the present case, defendant's codefendant has not taken the stand for any purpose. The risk that a jury may be influenced by such erroneous comment *vis-á-vis* a codefendant who has not testified at all is nonetheless present, even though as a matter of law they cannot consider such comment, for, as a matter of fact, they cannot disregard it. (See *People* v. *Aranda,* 63 Cal.2d 518, 528

[47 Cal.Rptr. 353, 407 P.2d 265].) We have come to recognize that a jury simply cannot "segregate evidence into separate intellectual boxes." (*People* v. *Chambers*, 231 Cal.App.2d 23, 33 [41 Cal.Rptr. 551].)

In the instant case, we have concluded that the proscription declared in *Griffin* was violated as to both defendants. In order to carry out the mandate imposed on this court, the evidence against defendants and their theories of defense (*People* v. *Garner*, 258 Cal.App.2d 420, 429 [65 Cal.Rptr. 780]) must be examined to determine whether the prosecution has satisfied us "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824]; *People* v. *Modesto, supra*, 66 Cal.2d 695, 712.) Our examination of the record discloses that there is "no reasonable possibility that the error might have materially influenced any juror in arriving at the verdict in this case" and that it is "most unlikely that any jury would have reached a different conclusion even if the prohibited comment had not been articulated." (*People* v. *Modesto, supra*, 66 Cal.2d at p. 712.) This court is convinced beyond a reasonable doubt that the comment complained of was harmless and did not contribute to the verdicts obtained. (*People* v. *Northern*, 256 Cal.App.2d 28, 30-31 [64 Cal.Rptr. 15]; *People* v. *Crawford*, 253 Cal.App. 2d 524, 536 [61 Cal.Rptr. 472].)

■ Defendant Hoston complains of the recital in the judgment that he was armed with a deadly weapon at the time of the commission of the offense. Since there is no evidence that he was personally armed, such recital is improper and should be stricken from the judgment. (*People* v. *Smith*, 259 Cal.App.2d 814, 818 [66 Cal.Rptr. 551].) As so modified, the judgment of conviction as to defendant Hoston is affirmed. The judgment of conviction as to defendant Eaton is affirmed.

Aiso, J., and Reppy, J., concurred.